THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

THE PEOPLE *ex rel.* Thomas H. Cooley, Collector.

*Filed at Springfield April 5, 1889.*

1. TAXATION—*railroad track—by whom to be assessed—and what included therein.* Land held by a railroad company for a right of way is required by law to be assessed for taxation by the State Board of Equalization, and not by the local assessor. This rule is not limited to the

right of way of the main track, but embraces the right of way of all the side-tracks, switches and turn-outs as well. An assessment of such property by the local assessor is void.

2. A side-track of a railroad company leading from the main track to a stone quarry, and used for the purpose of procuring stone for ballasting the road, for the purposes of taxation must be regarded as "railroad track."

Appeal from the County Court of Pike county; the Hon. Edward Doocy, Judge, presiding.

The main track of the Chicago and Alton Railroad Company is located across the south-west quarter of the south-east quarter of section 10, township 7 south, range 2 west, in Pike county, and the right of way over this land is two hundred feet wide, the track running nearly east and west. North of the main track, and commencing a short distance west of the tract of land in question, there is a side-track running east, and gradually curving to the north, known as the "Quarry track," and some 1471 feet in length. This side-track leaves the right of way of the main track about half way across the tract of land above mentioned. The side-track has a right of way of one hundred feet, or fifty feet on each side of the center of its track. There is also a branch of this side-track between it and the main track, known as the "Screening-bin track." The railroad company, in March, 1882, purchased $8\frac{9}{100}$ acres of land in the north-west corner of said forty-acre tract joining its right of way, upon which there is a stone quarry. North of the railroad track the company erected a large frame building, a part of which stands upon the right of way of the main line, and a part on the right of way of the side-track known as the "Quarry track." The building contains two stone crushers. The stone blasted from the quarry on the $8\frac{9}{100}$ acre tract is carried into this building on the quarry track, and crushed, and then used to ballast the road-bed of the railroad. There is also an engine and boiler-house north-east of the building, located on the right of way of the side-track. The location of

the main and side-tracks, the stone quarry and the buildings, is shown by a plat in the record.

In May, 1887, the defendant company returned to the county clerk of Pike county a schedule, sworn to, showing, among other things, property held for the right of way, and the length of the main track and all side and second tracks on the tract of land first above mentioned, which included the main track and all the side-tracks and rights of way above mentioned, and also stated the value of the superstructures and improvements thereon, as above described. Said company also returned a list of its real estate in said township other than that denominated "railroad track," which included the $8\frac{9}{100}$ acres of land above mentioned, less the right of way of the side-track, and also a list of its personal property, as required by law. The township assessor assessed the whole of the $8\frac{9}{100}$ acre tract as land, and the State Board of Equalization assessed that part of said tract used as right of way for the side or quarry track, as "railroad track." The company paid the taxes assessed by the State board, but refused to pay on the assessment made by the local assessor, in so far as the land occupied by the side-track was involved. The county collector of Pike county made application for judgment against the land to pay the taxes arising on the assessment made by the local assessor, and on the hearing, judgment was rendered in favor of the collector, to reverse which the railroad company has appealed.

Mr. A. C. Matthews, and Messrs. Wike & Higbee, for the appellant:

If the property in question belongs to that class known in the Revenue law as "railroad track," then it was assessable by the State Board of Equalization, and the township assessor had no power to make the assessment, and the judgment based on such assessment is erroneous. *Railroad Co.* v. *People*, 98 Ill. 350.

Under the Revenue law, the exclusive power to assess railroad track and rolling stock of railway companies is conferred upon the State Board of Equalization, and therefore an assessment of property used as railroad track, by the local assessor, is void. *Railroad Co.* v. *People,* 98 Ill. 350.

Land held in actual use by a railroad company for side-tracks, switches and turn-outs, must be regarded, within the meaning of the Revenue law, as a part of the right of way of the company, notwithstanding it may have machine shops, depots, round-houses and other structures thereon. The Revenue law anticipated that such structures would be erected on the company's right of way, and needs express provision, when that was done, that they should form a part of the right of way, and be taxed as such. *Railroad Co.* v. *People,* 98 Ill. 350; *Railroad Co.* v. *Weber,* 96 id. 443; *Railroad Co.* v. *People,* 4 Bradw. 468; *Railroad Co.* v. *Miller,* 72 Ill. 144; *Railroad Co.* v. *Goar,* 118 id. 134; *Railroad Co.* v. *People,* 99 id. 464.

One of the crushers, and a little more than half of the building, is on the right of way to the main track, which has been assessed by the State board. A double assessment of the same property is void. Const. art. 9, sec. 1; *Railway Co.* v. *Miller,* 72 Ill. 144.

Mr. W. E. Williams, and Messrs. Orr & Crawford, for the appellee:

It is the duty of the town assessor to assess all real estate, including stations and other buildings and structures thereon, other than that denominated "railroad track," belonging to any railroad. Starr & Curtis' Stat. p. 2044, chap. 120, sec. 46 (latter half); *Railroad Co.* v. *People,* 4 Bradw. 468.

"Railroad track" means right of way, including the super-structures of main, side or second track, and turn-outs, and the stations and improvements of the railroad company on such right of way. Starr & Curtis' Stat. p. 2044, chap. 120, sec. 42; *Hack* v. *Railroad Co.* 86 Ill. 359; *Railway Co.* v.

*Miller*, 72 id. 148; *Railroad Co.* v. *Paddock*, 75 id. 616; *Railroad Co.* v. *Weber*, 96 id. 448.

Upon application by a county collector for judgment against lands for delinquent taxes, no one can object on account of mistakes, irregularities or excessive valuation, unless fraud is shown. The only place such objections can be made is before the town board. Starr & Curtis' Stat. p. 2054, chap. 120, sec. 86; *Spencer* v. *People*, 68 Ill. 510; *Life Ins. Co.* v. *Pollak*, 75 id. 294; *People* v. *Iron Co.* 89 id. 116; *Humphreys* v. *Nelson*, 115 id. 45; *Mix* v. *People*, 116 id. 265; *Railroad Co.* v. *Hodges*, 113 id. 323; *Railway Co.* v. *People*, 119 id. 182; *People* v. *Lots in Ashley*, 122 id. 297.

Because a tract of land may have one or two, or more, side-tracks on it, it can not be regarded as a right of way, but the land on which the side-track is, must be used by the railroad company as a right of way, for the purpose of operating its road as a common carrier. *Railroad Co.* v. *People*, 98 Ill. 360.

Mr. Chief Justice Craig delivered the opinion of the Court:

The question presented by this record is, whether the strip of land 100 feet wide and 1472 feet in length, extending from the main track in and to the stone quarry, known as the "Quarry track," is, within the meaning of the Revenue law, "railroad track," or is it real estate of the railroad company other than railroad track. If it is the former, then it was lawfully assessed by the State Board of Equalization, and the local assessor had no authority to assess it; if the latter, then it was within the power of the local assessor to make the assessment, and the judgment of the county court sustaining the assessment and rendering judgment against the property for the tax was right.

Section 41 of the Revenue act provides, "that railroad companies shall, in the month of May in each year, when required, make out and file with the county clerks of the respective

counties in which the railroad may be located, a statement or schedule showing the property held for right of way, and the length of the main and all side and second tracks and turn-outs in such county, * * * giving the width and length of the strip of land held in each tract through or into which said road may run, and the number of acres thereof. They shall also state the value of improvements and stations located on the right of way."

Section 42 provides: "Such right of way, including the superstructures of main, side or second track and turn-outs, and the stations and improvements of the railroad company in such right of way, shall be held to be real estate for the purposes of taxation, and denominated 'railroad track,' and shall be so listed and valued."

Section 47 provides: "The county clerk shall return to the assessor of the town a copy of the schedule of the real estate other than 'railroad track,' and of the personal property, except rolling stock, pertaining to the railroad; and such real and personal property shall be assessed by the local assessor."

Section 48 provides "that the railroad company shall return to the Auditor a schedule of the property denominated 'railroad track,' giving the length of the main and side or second tracks and turn-outs, and showing the proportions in each county," etc.

Section 109 provides "that the State Board of Equalization shall assess the railroad property denominated 'railroad track' and 'rolling stock,' and the amount so determined and assessed shall be certified by the Auditor to the county clerk."

From these provisions of the Revenue law it is manifest that the local assessor has not been clothed with power to assess "railroad track," and that the assessment of such property can only be made by the State Board of Equalization. By the terms of section 41 it is seen that the railroad company is required to return a schedule showing the property held for right of way, the length of the main and all side and

second tracks and turn-outs. This section is followed by section 42, which declares that such right of way shall be held to be real estate for the purposes of taxation, and denominated "railroad track," and shall be so listed and valued. The right of way spoken of in these two sections is not limited to the right of way of the main track, but embraces the right of way of all side-tracks and turn-outs as well.

In discussing this question in *Chicago and Alton Railroad Co.* v. *The People*, 98 Ill. 354, we used the following language: "We can see no reason why the term 'right of way' should be confined to the land over which the main track of a railroad should be constructed. The land upon which a side-track, a switch or a turn-out is built, and in actual use by the company in the business for which it was organized, for all practical purposes is as much held for right of way as is the land upon which the main track is constructed. * * * We are therefore of the opinion that the land held and in actual use by a railroad company for side-tracks, switches and turn-outs must be regarded, within the meaning of the Revenue law, as a part of the right of way of the company."

In *Chicago and Northwestern Ry. Co.* v. *Miller*, 72 Ill. 144, town lots alleged to be used as right of way by a railroad company were held to be "railroad track," and not subject to assessment by the local assessor. It is there said: "We must take the averment in the bill, that these lots are used by appellant as right of way, confessed, as it is, by the demurrer, to be true. It then follows, that under the 42d section they fall under the denomination of 'railroad track,' and we perceive no authority to assess them otherwise."

In *Ohio and Mississippi Railroad Co.* v. *Weber*, 96 Ill. 448, it is held, that under our statute the property of railroads, for the purpose of assessment, is classified, and specific names are adopted to designate all the property embraced in a class, —that the term "railroad track" embraces property held for right of way, including superstructures thereon.

37—129 Ill.

In *Chicago and Alton Railroad Co.* v. *The People, supra,* thirty-two acres of land in actual use by the railroad company in the operation of its railroad was held to be "railroad track," and not liable to be assessed by the local assessor. This decision was followed and approved in *Chicago and Alton Railroad Co.* v. *The People,* 99 Ill. 466, where it was held: "Where a lot is returned by a railroad company in its list as being used for tracks, side-tracks, etc., in connection with the road, and for railroad purposes, and the board of equalization assess the same, an assessment by the local assessor will be a double assessment, and the tax extended upon such assessment will be illegal." It was also held, that where only a portion of a lot is used for railroad purposes, to that extent it is properly returnable to the board of equalization for assessment.

In *Peoria, Decatur and Evansville Railroad Co.* v. *Goar,* 118 Ill. 136, the rule announced in the *Alton case, supra,* was again approved, and it was held, "that under the Revenue law the exclusive power to assess 'railroad track,' which includes right of way, with the superstructures of main, side or second track and turn-outs, and the station and improvements thereon, is conferred upon the State Board of Equalization, and therefore an assessment of the property used as 'railroad track,' by the local assessor, is void."

Upon the hearing in the county court, it appeared, from the evidence, that one hundred feet was the necessary and proper width of the right of way for the quarry track. It also appears that the rock quarried and brought in on the track is crushed in the building provided for that purpose by the company, and used to ballast the Chicago and Alton railroad, and that the ballasting is a necessary part of the work of keeping the road in repair. The question then is, whether a side-track (as the quarry track is but a side-track when constructed by a railroad company and used for the sole purpose of keeping the road-bed in proper repair) is to be regarded, within the meaning of the Revenue law, as "railroad track." Under

the former decisions of this court we think it is. If land upon which a railroad company may erect machine shops, car shops and round-houses, where repairs are made for the company's rolling stock, may be regarded as "railroad track," for the same reason and upon the same principle a quarry track, constructed for the sole purpose of providing material to keep the road-bed in proper repair, may be regarded as "railroad track." This side-track was necessary to enable the railroad company to properly operate its line of road under its charter. If the road is to be operated with due regard to a safe shipment of property and the safety of the life of the passenger, the road-bed must be kept in good condition.

In conclusion, we think the local assessor had no power to assess the quarry track, and the county court erred in rendering judgment for the tax arising from such assessment.

The judgment of the county court will be reversed, and the cause remanded.         *Judgment reversed.*

Mr. Justice SCHOLFIELD : I did not concur in the definition of "right of way" given in *Chicago and Alton Railroad Co.* v. *The People ex rel.* 98 Ill. 350, and my opinion has undergone no change in that respect since. It necessarily follows that I do not concur in the views expressed by a majority of the court in the present case.

Mr. Justice MAGRUDER, dissenting:

I do not concur in the opinion of the majority. Is it lawful for a railroad company to engage in the business of quarrying stone? A railroad company is a common carrier. Its business is to carry passengers and freight for hire. It has no power under its charter to do anything else, and the interests of the people require that it should not be permitted to do anything else.

The reason given for allowing the appellant company to operate a stone quarry is, that it needs the stone for the pur-

pose of repairing its road-bed. The evidence, however, does not show that such is the only purpose, for which it quarries stone, or that all the stone so quarried is used for such purpose alone. But even if it requires stone to make repairs upon its road-bed, it is not, for that reason, justified in engaging in the business of quarrying stone. If there is a surplus beyond what it needs for its own use, what becomes of such surplus? Is it sold upon the market? Will the company charge itself freight for hauling stone from its own quarry? Can any individual citizen, owning and operating a stone quarry on the line of the company's road, and being obliged to pay freight for having the same carried to market, compete with the company which pays no freight?

A railroad company needs coal for the purpose of propelling its engines. May it, for that reason, own and operate a coal mine? If it does so, what other owners of coal mines along the line of its road will be able to compete with it?

A railroad company needs food for the passengers and employes whom it carries upon its trains. Shall it, therefore, buy farms and raise butter and eggs and chickens and cattle and grain, and erect mills to convert the grain into flour, and slaughter houses to change the cattle into edible meats? If so, what chance have the farming interests of the country to live?

Will not the decision in this case be used as a precedent to justify the creation of monopolies that are dangerous to the industries, if not to the liberties, of the people?

The opinion of the majority also holds that the stone quarry and the side track running into it from the main-track, and the machinery and buildings and crushers connected with the operation of the stone quarry, are a part of the railroad track, and, therefore, subject to assessment by the State Board of Equalization, and not by the local assessor. This doctrine is based upon the decision of this Court in *C. & A. R. R. Co.* v. *The People ex rel.* 98 Ill. 350. It was held in that case,

that thirty two acres of ground with the car-shops, machine shops, blacksmith shops, foundry, round-house, freight depot, stock yards, paint shops, etc., were a part of the railroad track, and, as such, could not be assessed by the local assessor. But is it not true, that the act of the legislature, upon which the decision referred to is based, fails to distinguish between railroad *track* and railroad *right of way?*

The fact is, that the system prevailing in this State, by which the property of the individual citizen is required to be assessed by a local assessor who is near by and can easily learn its value, while the property of the corporations is permitted to be assessed by the State Board of Equalization which is afar off and can, with difficulty, learn the real value, is all wrong. The State Board of Equalization should be confined to the equalization of assessments already made, and should not be allowed to make original assessments of property. If it should do so in any case, it ought to be only in the case of *railroad track.* The track is one entire thing, running through towns and counties, and across the width or length of the State, and, therefore, it may be said that it ought to be assessed as an entirety, and not in parts. But the same is not true in regard to the *right of way.* The right of way is usually a strip of land two hundred feet wide, one hundred feet on each side of the track. The value of 100 feet of ground in a town, village or city can easily be ascertained by the local assessor. The one hundred feet in such town, city or village have a different value from that of the 100 feet on the prairie. Right of way is land, and its parts are capable of being valued according to location. Why should it not be assessed by the local assessor?

Why should the lot, 100 feet deep, of the individual citizen be assessed by the local assessor while the lot of the railroad company of the same depth is assessed by the distant board of equalization? It is a matter of public notoriety that the property of the great corporations is assessed too low, and

thereby escapes its just share of taxation. The Board, which meets at the State Capitol, cannot ascertain the values as accurately as the assessors, who live near the property assessed. Is the policy of this State, which thus distinguishes between corporate property and other kinds of property, just and fair? The home of the individual is valued by a local official and bears its fair proportion of the public burdens, but the great freight house of the railroad company is declared to be a part of the "track," and is valued by a board of officials, whose very organization renders it impossible for them to make correct estimates. And yet this Board has been virtually clothed with the functions of a judicial body. The grossest irregularities cannot subject its action to review. Nothing but fraud will justify an investigation into the correctness of its conclusions.