## The Chicago, Burlington and Quincy Railroad Company

*v.*

## The People *ex rel.* Kreitz, Collector.

*Filed at Springfield March 30, 1891.*

1. Taxation—*railroad track—in what it may consist.* Lots and parts of lots bought by a railway company near its right of way, and intended to be used for railroad tracks in the future if a purchase of the other parts of the lots could be made, and which are rented to tenants and used for other than railroad purposes, are not in any sense a part of such company's railroad track, as defined by section 42 of the Revenue law.

2. Where stations and other improvements are erected on the right of way of a railway company, they may be regarded as a part of the railroad track, within the meaning of section 42 of the Revenue act; but a station erected on land which is not a part of the right of way is not necessarily a part of the railroad track. The construction by a railway company of its passenger station on land adjoining its right of way, will not, *ipso facto*, have the effect of constituting such land a part of the right of way.

3. Same—*double taxation—party's own fault—no remedy.* If a railway company erroneously schedules lots as part of its railroad track, when in fact they have never been appropriated for such use, and they are assessed by the State board as a part of the railway track, this will not interfere with the duty of the local assessor to assess the same, or of the proper officers to extend the taxes on such local assessment.

4. In case the levy of an invalid tax by the State Board of Equalization is brought about by the land owner's own voluntary act in returning the land as "railroad track" when it is not any part of such track, a payment of such tax must be regarded as a voluntary payment, in respect of which the law affords no remedy; and the payment of such invalid tax will furnish no defense against an application for judgment for taxes properly levied on an assessment of the property by the local assessor.

Appeal from the County Court of Adams county; the Hon. B. F. Berrian, Judge, presiding.

Mr. J. F. Carrott, and Mr. O. F. Price, for the appellant:

As to what is denominated "right of way" and "railroad track" under the Revenue act, see Rev. Stat. chap. 120, sec.

42; *Railway Co.* v. *Miller*, 72 Ill. 144; *Railroad Co.* v. *People*, 98 id. 360.

"Railroad track" embraces property held for right of way, including superstructures thereon, and is only assessable by the State Board of Equalization. Revenue Act, (Starr & Curtis,) secs. 48, 50, 110; *Railroad Co.* v. *Weber*, 96 Ill. 443; *People* v. *Railroad Co.* 116 id. 181.

Actual use for railroad purposes is not essential to the property being classified as "railroad track," but it is enough that it has, in good faith been acquired, and is "held for right of way." *People* v. *Railroad Co.* 116 Ill. 181.

The property in question here assessed by the local assessor was held by the Chicago, Burlington and Quincy Railroad Company for its "right of way," and was, therefore, embraced in the class of property denominated by the Revenue law "railroad track," and was not assessable by the town assessor, and the levy of a tax upon such assessment is absolutely void. *People* v. *Railroad Co.* 116 Ill. 181; *Railroad Co.* v. *People,* 129 id. 571.

The State Board of Equalization did in fact assess this property as "railroad track," and such assessment has been paid by the appellant, and a double assessment of the same property is void. *People* v. *Bradley*, 39 Ill. 130; *Railroad Co.* v. *Miller,* 72 id. 144; *Railroad Co.* v. *People*, 99 id. 464.

Mr. M. A. Wheat, for the appellee:

The bill of exceptions fails to show any exceptions to the judgment, or to any ruling of the court, so that this court can not consider the assignments of error. *Pottle* v. *McWorter*, 13 Ill. 454; *Daniels* v. *Shields*, 38 id. 197; *Gill* v. *People*, 42 id. 321; *Manufacturing Co.* v. *Horton*, 74 id. 310; *Railroad Co.* v. *Easterly*, 89 id. 156; *Railroad Co.* v. *Dorsey*, 68 id. 326; *Dietrich* v. *Waldron*, 90 id. 115; *James* v. *Dexter*, 113 id. 654; *Martin* v. *Foulke*, 114 id. 206; *Hake* v. *Strubel*, 121 id. 321; *Railroad Co.* v. *Bowman*, 122 id. 595; *Chicago* v. *Porter*, 124 id.

589; *Burns* v. *People*, 126 id. 282; *Insurance Co.* v. *Peck,* id. 493; *Railway Co.* v. *Yando*, 127 id. 214; *Gould* v. *Howe,* id. 251; *Railway Co.* v. *Harper*, 128 id. 384; *Steffy* v. *People,* 130 id. 98; *Harris* v. *People*, id. 457.

Appellant is in no position to allege a conflict between the evidence and the finding and judgment of the court below, as no rehearing was asked for or exception taken to the final judgment of the court. *Pottle* v. *McWorter*, 13 Ill. 454; *Insurance Co.* v. *Peck*, 126 id. 493; *Daniels* v. *Shields*, 38 id. 197; *Gould* v. *Howe*, 127 id. 251; *Manufacturing Co.* v. *Horton,* 74 id. 310.

Mr. Justice Bailey delivered the opinion of the Court:

This was an appeal from a judgment of the County Court of Adams county, against certain delinquent town lots belonging to the Chicago, Burlington and Quincy Railroad Company, for taxes claimed to be due thereon for the year 1889. The taxes in question were levied on said lots upon an assessment made by the local assessor, and upon application by the county collector for judgment, said railroad company appeared and filed objections, which being overruled, judgment was rendered against said lots for the amount of said taxes. Said objections were, in substance, that said lots constituted a part of the property of the appellant denominated by the Revenue Law "railroad track," and that the assessment thereof by the local assessor was without authority of law and void; that the appellant, in the year 1889, duly returned said lots to the county clerk of said county as a part of its right of way and "railroad track," and that upon such return said lots were duly assessed by the State Board of Equalization, and that taxes for that year were duly extended upon such assessment and had been paid by the appellant.

The determining question in the case is, whether said lots constituted a part of the appellant's "railroad track," within the meaning of sections 41 and 42 of the Revenue Law. If

it did, the local assessor had no power to assess it, and the taxes levied upon such assessment are invalid. If, on the other hand, it was not a part of said "railroad track," the local assessor was the proper officer to make the assessment, and it is difficult to see how the taxes levied on his assessment can be affected by the fact that the appellant improperly and falsely returned said lots as a part of its "railroad track" and thus caused its assessment by the State Board of Equalization and its taxation upon that assessment.

Section 41 of the Revenue Law requires railroad companies to make out and file with the county clerks of the various counties in which their railroads may be located, a statement or schedule, "showing the property held for right of way, and the length of the main and all side and second tracks and turnouts in such county, and in each city, town and village in the county, through or into which the road may run, and describing each tract of land, other than a city, town or village lot, through which the road may run, in accordance with the United States surveys, giving the width and length of each strip of land held in each tract, and the number of acres thereof." Section 42 is as follows: "Such right of way, including the superstructures of main, side and second track and turnouts, and the station and improvements of the railroad company on such right of way, shall be held to be real estate for the purposes of taxation, and denominated 'railroad track,' and shall be so listed and valued; and shall be described in the assessment thereof as a strip of land extending on each side of such railroad track, and embracing the same, together with all the stations and improvements thereon, commencing at a point where such railroad track crosses the boundary line in entering the county, city, town or village, and extending to the point where such track crosses the boundary line leaving such county, city, town or village, or to the point of termination of the same, as the case may be, containing . . . . . acres, more or less, (inserting name of county, township, city, town

or village boundary line of same, and number of acres, and length in feet,) and when advertised or sold for taxes, no other description shall be necessary."

Section 48 requires railroad companies, at the time of filing their schedules with the county clerks, to return to the Auditor of Public Accounts sworn schedules of their property denominated "railroad track," and subsequent sections require those schedules to be laid before the State Board of Equalization, and authorize and provide for the assessment of the property thus scheduled by said board. Section 46 provides that: "All real estate, including the stations and other buildings and structures thereon, other than that denominated railroad track, belonging to any railroad, shall be listed as lands or lots, as the case may be, in the county, town, village, district or city where the same are located." Section 47 requires the county clerk to return to the assessor of the town or district, as the case may require, a copy of the schedule of the real estate, other than "railroad track," and of the personal property, other than rolling stock, pertaining to a railroad, and provides that such real and personal property shall be assessed by the assessor. It further provides that: "Such property shall be treated in all respects, in regard to assessment and equalization, the same as other similar property belonging to individuals, except that it shall be treated as property belonging to railroads, under the terms of lands, lots and personal property."

It appears from the evidence adduced at the hearing of the appellant's objections, that the main track of the appellant's railroad runs along Front street in the city of Quincy; that blocks 2 and 3, in Pease's Addition to Quincy adjoin Front street on the east; that in 1884 or 1885, the appellant obtained by purchase the title to lots 1, 2, 3, 4, and south 30 feet of lot 5, lot 6 and the south 30 feet of lot 7, in said block 2, and lots 4, 5, 6 and 7, in said block 3; that said lots were purchased with the view of ultimately acquiring the title to

the remaining portions of said blocks, either by purchase or condemnation, and of locating and erecting on said property a passenger station ; that the title to the residue of said blocks had not been acquired by purchase because the owners thereof were asking prices which the appellant deemed too high, and that no steps had been taken to acquire title thereto by condemnation; that none of said lots had ever been in fact used for railroad purposes ; that at the time they were purchased, a warehouse and perhaps some other buildings were standing thereon, and that since said purchase, said buildings had been in the occupancy of third persons by appellant's permission, who had paid the appellant rent therefor.

It seems to us to be very clear, that whatever appropriation the appellant intends to make or may hereafter make of said lots when it has succeeded in acquiring title to the residue of its proposed depot grounds, said lots can not now be said to be, in any proper sense, a part of its "railroad track." They are not and never have been actually appropriated by the appellant as a part of its right of way, and so does not come within the definition of "railroad track," as given by said section 42 of the Revenue Law.

Even if the title to the residue of the site for the proposed passenger station had been acquired and the station built, that alone would not necessarily constitute the lots in question a part of the appellant's "railroad track." Where stations and other improvements are erected on "the right of way" of a railroad company, they may be regarded as a part of the "railroad track" within the meaning of section 42 of the Revenue Law, but section 46 clearly contemplates the possibility of stations and other buildings and structures of railroad companies not being on their right of way, and therefore not a part of their "railroad track." No railroad tracks have ever been constructed upon the lots in question here, and there is no proof in the record that the appellant contemplates the construction of any of the tracks thereon. It is not easy to

see then how the construction by the appellant of its passenger station on a piece of land adjoining its right of way will *ipso facto* have the effect of constituting said land a part of the right of way. But there has so far been no appropriation of said lots as a site for a passenger station. The evidence merely shows an intention to make such appropriation whenever the complainant succeeds in obtaining title to the residue of the property necessary for the purpose. That may or may not happen, and until it does, the lots which the appellant now holds can not be regarded as having been definitely appropriated to any railroad purpose. There is no view of the case then in which said lots can now be regarded as a part of the appellant's "railroad track."

But it is said that the former decisions of this court sustain a different view from the one here expressed. The case of *C. & N. W. Ry. Co.* v. *Miller*, 72 Ill. 144, to which we are referred, arose upon demurrer to a bill, it being alleged in the bill that the city lots there in question were used by the railroad company as a part of its right of way, and as such had been returned to and assessed by the State Board of Equalization as a part of its "railroad track." The averments of the bill being admitted by the demurrer, no question was presented as to whether said lots were or were not in fact a part of the "railroad track," but upon the case as admitted, it was held that the assessment by the State Board of Equalization was the proper one.

In *C. & A. R. R. Co.* v. *The People*, 98 Ill. 350, the question was whether two lots of land in the city of Bloomington, containing something over thirty-two acres, was a part of the "railroad track" of the Chicago and Alton Railroad Company. It appeared that the main tracks of said company ran across said land, occupying a strip of land one hundred feet in width, and that upon the residue of said land were situated the car shops, machine shops, blacksmith shops, foundry, roundhouse, freight depot, stock yards, paint shops, etc., of said

company, and that the entire tract was covered with railroad tracks continually in use for the purpose of running cars and engines over them, and for switching cars, making up trains, loading and unloading cars, and for various other purposes in the transaction of the company's business as common carriers. Although it is not so specifically stated in the report of the case, we may assume, from our general knowledge of such establishments, that said company's railroad tracks run through or into most if not all of said shops and buildings, and therefore that the whole of said land, including that covered by said buildings as well as the rest, was practically and substantially occupied by said tracks and used as a roadway for the movement of the company's engines and cars. We there held that the land in the actual use of a railroad company for side tracks, switches and turnouts must be regarded just as essentially a part of its right of way, within the meaning of the Revenue Law, as was the land occupied by its main tracks, and as in that case substantially all of the land there in question was thus appropriated and used, it formed a part of the company's right of way and "railroad track," although the company had erected and was using various shops thereon for the housing, construction and repair of its engines and cars. It is too plain for serious controversy that the rule established by that case has no application to the questions presented by the present appeal.

*The People* v. *C. & W. I. R. R. Co.* 116 Ill. 181, presented a case of a new railroad which had been located over a given route, was in actual process of construction, had purchased the pieces of property there in question for its right of way, and was holding them for that purpose, although it had not acquired all the intervening property, but was proceeding by condemnation and purchase to acquire it all, so as to make a continuous line of road, and so as to actually use it all for tracks and stations. We there said that it would be a too narrow construction of the statute to hold that the property

must be in the actual use of the railroad company for railroad purposes, the requirement of the statute being, that the schedule filed with the county clerk should show, not that the property was actually used for right of way, but that it was "held for right of way;" that "where property is circumstanced as all this was, the road being in process of construction, and the property in good faith acquired and held for right of way, and the delay coming only from the non-acquirement of intervening property which was being obtained, such property is to be considered as much a part of the 'railroad track,' as denominated by the Revenue Law, as if tracks had actually been constructed upon it." It is clear that the doctrine thus announced can have no application to the record before us. Here the company in question is one whose right of way has long been established and in use, and although the lots under consideration may have been purchased with the intention of ultimately using them for the purposes of a passenger station, nothing has been or is being done by way of carrying that purpose into execution, or of acquiring the other lands necessary for that purpose, although at the time the assessment in question was made, four or five years had elapsed since their purchase. It may be that it is the intention of the appellant to make use of said lots at some future time in such way as to make them a part of its railroad system, and possibly of its right of way, but it is clear that it has not done so.

In *C. & A. R. R. Co.* v. *The People,* 129 Ill. 571, the only question was whether the land constituting the actual right of way of a side track running from the company's main track to a certain stone quarry owned by the company, and which it was working for the purpose of obtaining stone for railroad purposes, was a part of the company's right of way within the meaning of the Revenue Law, so as to be properly returned and assessed as a part of its "railroad track." On the authority of former cases that question was answered in the affirmative. It was not disputed that the land there assessed

as "railroad track" was properly appurtenant to said side track as its right of way, the question being whether a side track situated as that was and constructed and used for the purposes there shown was one of the side tracks or turnouts of said railroad company within the meaning of section 41 of the Revenue Law. Clearly the questions involved in that case have no bearing upon the present appeal.

It is strenuously urged that if the assessment in question is sustained, the appellant, having already paid the taxes on the same property levied in pursuance of the assessment made by the State Board of Equalization, will be subjected to a double taxation of said property. If that is the case, it is so by reason of an act for which the appellant alone is responsible. Its error in scheduling said lots as a part of its "railroad track" in no way interfered with the right and duty of the local assessor to assess said lots, or of the proper officers to levy and extend the taxes upon such assessment. The invalid tax was that levied on the assessment of the State Board of Equalization, and that assessment having been brought about by the appellant's own voluntary act, and the taxes levied thereon having been voluntarily paid by it, such payment must be regarded as a voluntary payment, in respect to which the law gives the appellant no remedy.

We are of the opinion that the objections filed by the appellant were properly overruled, and the judgment of the County Court will therefore be affirmed.

*Judgment affirmed.*

Mr. Justice Magruder: I concur in the conclusion reached by this opinion, but not in the views expressed in it for the reasons stated in dissenting opinion in *C. & A. R. R. Co.* v. *The People,* 129 Ill. 571.