# CIRCUIT COURTS OF ILLINOIS.

(*County Court of Hancock County.*)

## The People of the State of Illinois upon the Relation of Rudolph Anton, County Treasurer,

### vs.

## The Atchison, Topeka & Santa Fe Railroad Company.

(1906.)

1. FRANCHISE—DEFINED. A franchise is a particular privilege conferred by grant from the sovereign or government and vested in individuals or a corporation.
2. TAXATION—FRANCHISES CONFERRED BY CONGRESS. Franchises conferred by congress, cannot, without its permission, be taxed by the states.
3. SAME—FRANCHISES—POWER OF LOCAL ASSESSORS. Where one part of a bridge structure is devoted to railroad purposes and the other part contains toll wagon ways which are situated upon either side of the railroad tracks and the bridge property is assessed as a whole by the state board of equalization, the local assessors have no right to levy a tax upon the right to operate the toll wagon ways, as such ways are equally a part of the franchise, which can only be assessed by the state board of equalization.
4. SAME—OMITTED PROPERTY. Nor can such toll wagon ways be assessed as "omitted property" inasmuch as the state board of equalization extended its assessment upon the entire bridge property. Nor is it material that the property should have been separately assessed.
5. SAME—SEPARATE PROPERTY TAXED UNDER GENERAL DESCRIPTION. Where one general description is used in the taxation of property, the whole is comprehended, even though the object is capable of being separated into separate classes of property, for purposes of taxation. If it is not so separated, the whole is included under a general description.

1

6. SAME—DEFINITENESS OF ASSESSMENT.  An assessment as definite as the grant under which the land is held, is sufficient.
7. SAME—OMITTED PROPERTY.  To permit the assessment of omitted property, it must be omitted in fact, and an assessment, even though irregular, is sufficient to prevent a re-assessment as omitted property.

Petition for judgment and sale for nonpayment of taxes.

The facts are stated in the opinion.  Heard before Judge J. W. Williams.

*G. V. Helfrich,* state's attorney, and *D. E. Mack,* for the People.

*J. D. Miller,* for defendant.

Opinion by Judge J. W. WILLIAMS:—

This is a suit wherein the people seek judgment and order of sale against the property hereinafter described, for the alleged non-payment of taxes for the years 1901, 1902, 1903 and 1904.

It was attempted to be assessed by the county board of review, of Hancock county, in September, 1904, for said years, and a valuation of $50,000 was placed upon the same, for each of said years, and it was taxed for each of said years at $10,000 (being one-fifth of the valuation thereof).

The property was returned delinquent for alleged taxes as follows: For 1901, $277; for 1902, $423; for 1903, $454.80; and for 1904, $526.51.

Objection is made against rendition of judgment as to any of said years, and upon the hearing the stipulation of the parties was introduced, and there was also oral and documentary evidence offered and considered in evidence.

It appears that the bridge property, as a whole, was assessed by the local assessor of Appanoose township, where the property is situated, for the years 1901, 1902, 1903 and 1904, upon a valuation of $400,000, and an assessed value of $80,000, upon which taxes as to the years 1901, 1902 and 1903 were extended.  These taxes were not paid, and the property was returned delinquent for each of said years.  Objections were filed as to each of said years, against the

rendition of judgment, and upon the hearing of the same, the objections were sustained and judgment was accordingly refused.

No appeal was taken from such refusal of judgment for the years 1902 and 1903, but as to such judgment of 1901 the people perfected an appeal to the supreme court. The judgment of the said county court was affirmed in said supreme court; the opinion may be found reported in vol. 206, at page 252, of the Illinois Reports.

Said decision as it appears to me has little bearing upon the present case, for the reason that in such assessments by the local assessor there was an attempt to assess the whole bridge, when it appears that on June 1, 1900, the then owner of said bridge conveyed said bridge with its rights and franchises to said railroad company. Such conveyance was made under the authority of the act entitled, "An Act concerning the rights, powers and duties of certain corporations therein mentioned, authorizing the sale and transfer of any railroad, or railroad and toll bridge, and other property, franchises, immunities, rights, powers and privileges connected therewith, or in respect thereto, of any corporation of this state to a corporation of another state and prescribing the rights, powers, duties and obligations of the purchasing company." Approved April 21, 1899, and in force July 1, 1899. See Session Laws of 1899, at page 116.

The legal effect of said conveyance, in connection with the above statute, was to make said bridge a part of the railroad system of the Atchison, Topeka & Santa Fe Railway Company, and to make it taxable as railroad property. The act expressly authorized railroads to acquire title to and operate such bridges whether with or without toll wagonways. The stipulation in this case shows that the said bridge was so operated as a railroad and toll bridge since its acquisition as aforesaid.

Under any view that may be taken of said act, at least a part of said bridge became in effect railroad track, and only liable to assessment by the state board of equalization, and of course the action of the local assessor could not under any

view be sustained in attempting to assess the whole bridge structure.

Since June, 1900 (the date of its purchase by said company), it has been assessed by the state board of equalization for each of the years 1901, 1902, 1903, and 1904, and the taxes so assessed have been paid for each of said years.

It appears from the schedule submitted to said board, and a copy of which was filed with the county clerk of this county, that for the year 1904, the description of the bridge property upon which taxes were assessed by the state board of equalization, was as follows: ''Island No. 15, from east end of bridge to west side of Island No. 15, or center of pier No. 8, and from center of pier No. 8 to center of pier No. 4, of Iowa and Illinois state line. This was formerly property of Mississippi River Railroad & Toll Bridge Company, and is now owned and operated by the Atchison, Topeka & Santa Fe Railway Company.''

The description upon which taxes were extended for the years 1901, 1902 and 1903 was substantially the same as that for 1904 and need not be here repeated. Upon this description all taxes so assessed by said state board were paid. This fact clearly appears from the stipulation filed in the case as to each of said years.

In the decision of the supreme court hereinbefore referred to, there is a reference to the question of the possible separation of the bridge structure into two parts for taxing purposes; one being the part devoted to the railroad business, and the other part being the toll wagonways upon either side of the railroad track.

Said supreme court carefully refrained from deciding the question of the divisibility of the structure into such two parts, and it is not decided whether such separation may be made for taxing purposes.

The assessments for said years 1901, 1902, 1903 and 1904 by said board of review were made upon the theory that the bridge property could be so divided.

The description by which the toll wagonways were assessed for each of said four years is as follows:

Two toll wagon roadways, one on either side of that part of the railroad track on the bridge of the Atchison, Topeka & Santa Fe Railway Company, described as follows: Commencing in the center of the main channel of the Mississippi river, which for more accurate account is designated to be the center of pier No. 5, known in the C. S. F. and C. survey as station No. 8, and 64 6-10 on the fifth pier of the main bridge from the Iowa shore from the bank of said river, counting the Iowa shore abutment as pier No. 1, thence in a southeasterly direction 1,224 1-10 feet to the center of pier No. 10, known in the C. S. F. & C. survey as station No. 20, and 88 7-10, said pier No. 10 being the tenth pier from the Iowa shore; situated on island No. 15, in sections 3 and 10 in Appanoose township, being township 7 north, range 8 west, from the 4th principal meridian, in Hancock county, Illinois, and also the approaches to said roadway and abutments and piling upon which said approaches rest, extending from the Illinois shore in said section 10 to said pier No. 10 of said railroad bridge, said roadways consisting of floors, side walls, supports, braces, stays, and irons and timbers attaching said roadways to said railroad bridge, together with the right to have said roadways attached to said railroad bridge as they are now attached, and to operate said toll roadways as they are now operated; section 10, township 7, range 8.

The objections against the rendition of judgment are many.

It is only necessary to consider two of them, in the decision of this case.

1. Are the assessments for said four years an attempt to assess a franchise or part thereof?

2. Have the taxes for any of said years been assessed and paid so as to make the assessment illegal and double taxation?

But little authority has been furnished me upon the first question.

In the description of the property, for each of the four years, occurs the following language: "Together with the right to have said roadways attached to said railroad bridge,

as they are now attached, and to operate said toll roadways, as they are now operated.'' The contention is made by the objector that this is an attempt to assess and tax a franchise or a part thereof.

A franchise is defined as a particular privilege conferred by grant from a sovereign or government and vested in individuals or a corporation. *Chicago Municipal Gas Light & Fuel Co. v. Town of Lake,* 130 Ill. 42.

A franchise is a special privilege emanating from the sovereign power, and owing its existence to a grant or to prescription presupposing a grant. *Wilmington Water Power Co. v. Evans,* 166 Ill. 548.

Corporate franchises proceed from the government or the sovereign power and owe their existence to a grant. *Chicago City Railway Co. v. People ex rel. Story,* 73 Ill. 541.

A franchise is a royal privilege or branch of the king's prerogative, subsisting in the hands of the subject and must come from the king's grant. Ibid.

There was a franchise granted in the case before us, by the state of Iowa to the ''Fort Madison and Illinois Railway and Bridge Company,'' in February, 1882, authorizing and empowering said company to construct, maintain and use a railroad and wagon bridge across the Mississippi river at Ft. Madison, Iowa.

In November, 1886, there was a corporation organized known as the Mississippi River Railroad and Toll Bridge Company, under the provisions of the statutes of Illinois, having for its object the construction, maintenance and operation of a railroad and wagon bridge over the Mississippi river.

In December, 1886, said Iowa corporation assigned and transferred all of its rights to the said Illinois corporation The bridge in question was built by said Illinois corporation in accordance with the laws of the United States and the states of Illinois and Iowa, and in pursuance of the charters of said two bridge companies, and is a lawful structure.

In 1872, the senate and congress of the United States passed an act to authorize the construction of a bridge and

to establish the same as a post road across the Mississippi river, at Ft. Madison, Iowa. This act confers a franchise to such persons as shall have authority from the states of Illinois and Iowa, to build a bridge over said river, and is in effect a federal franchise to the parties now owning and operating the same, who have at the same time franchises from the states of Illinois and Iowa, for the same purposes.

All of the above facts appear from the stipulation filed in the cause and are undisputed.

In the description of the toll wagon ways, as said before, occurs language showing that there is included in addition to the tangible property "the right to have said roadways attached to said railroad bridge as they are now attached, and to operate said toll roadways as they are now operated." The toll wagon ways could never have been constructed, maintained or operated, save under the franchises granted.

Since said bridge was built, it has been operated lawfully, under the franchises above referred to; without such franchises it could not have been lawfully operated. In my opinion such part of the description of the toll wagon ways as is above referred to cannot be disregarded nor rejected as surplusage. It is a material part of the description, and in my opinion is a clear attempt to value, assess and tax the right of the company to operate the roadways. The language used in the description forbids every other construction.

The local taxing authorities have no jurisdiction over franchises,

Franchises conferred by congress cannot, without its permission, be taxed by the states. *California v. Central Pacific R. R. Co.*, 127 U. S. 1.

A Kentucky corporation, operating a ferry across the Ohio river, is deprived of its property without due process of law by the action of that state in including, for purposes of taxation, in the valuation of the franchises derived by the corporation from Kentucky, the value of an Indiana franchise for a ferry from the Indiana to the Kentucky shore, which such corporation had acquired. *Louisville & Jeffersonville Ferry Co. v. Commonwealth of Kentucky*, 188 U. S. 385, 399.

In my opinion, the inclusion of the "right" to operate the toll wagon ways is fatal and that judgment cannot be rendered for any of the years 1901, 1902, 1903, and 1904, in this suit.

It is not strictly necessary to pass upon any other questions involved herein, but inasmuch as counsel have, on each side, favored me with learned briefs, as well as oral arguments, I deem it but proper to also consider the second point as well as the first.

The board of review of Hancock county undertook to assess said toll wagon ways of said bridge, for the years 1901, 1902 and 1903, as "omitted property," under the provisions of secs. 276 and 277.

It clearly appears from the record in this case, that the state board of equalization extended its assessment upon the bridge as a whole, there being no language in the description that would justify the construction that a part of the bridge was excepted.

Where one general description is used, the whole is comprehended, even though the object is capable of being separated into separate classes of property, for purposes of taxation. If it is not so separated, the whole is included under a general description such as is here used.

If the company had failed to pay its taxes for either of the years 1901, 1902, and 1903, and there had been judgment and sale and deed to the purchaser, there would be no question but that the grantee in the tax deed would have received title to the whole bridge.

"An assessment as definite as the grant under which the land is held, is sufficient." 1 Cooley on Taxation, p. 747.

In 1 Cooley on Taxation, p. 742, it is said that "the purposes in describing the land are: First, that the owner may have information of the claim made upon him or his property; second, that the public in case the tax is not paid, may be notified what land is to be offered for sale for the non-payment; and third, that the purchaser may be enabled to obtain a sufficient conveyance. If the description is sufficient for the first purpose it will ordinarily be sufficient for the others also."

In the view I take of the case, there can be no question but that the bridge was not omitted property so as to permit its assessment for the past years 1901, 1902 and 1903. For each of these years it had been assessed as one complete structure by the state board of equalization, and the taxes were paid, and even if the bridge ought to have been divided for taxing purposes, for said three years, it was not so divided, and the taxes (even if irregularly assessed) having been paid thereafter, it cannot be assessed as "omitted property" for said years.

In *The Wabash Railroad Company v. The People, ex rel. Samuel M. Funk, County Collector*, 196 Ill. 606, it is held that "An assessment against a railroad company as for 'omitted' school taxes is not authorized by sections 276 and 277 of the revenue act, where all school taxes levied upon the property during such years have been paid to the district for which they were levied, although the levy was made for the wrong district, and where all school taxes levied for the right district have been extended against other property than that of the railroad company and been paid." Section 276 is as follows: "If any real or personal property shall be omitted in the assessment of any year or number of years, or the tax thereon for which such property was liable, from any cause has not been paid, or if any such property by reason of defective description or assessment thereof, shall fail to pay taxes for any year or years, in either case the same, when discovered, shall be listed and assessed by the assessor and placed on the assessment and tax books. The arrearages of tax which might have been assessed, with ten per cent. interest thereon, from the time the same ought to have been paid, shall be charged against such property by the county clerk." The railroad property of appellant located in the east half of said sections 25 and 36, was not omitted in the assessment, as it was assessed in each of the years of 1892 to 1898, inclusive. All taxes levied upon said property during those years were paid, and there was no defective description of said property. The section above quoted does not, therefore, authorize the assessment of said property as omitted property.

Section 277 is as follows: "If the tax or assessment on

property liable to taxation is prevented from being collected for any year or years, by reason of any erroneous proceeding or other cause, the amount of such tax or assessment which such property should have paid may be added to the tax on such property for any subsequent year, in separate columns designating the year or years.''

In *Ohio & Mississippi Railway Co. v. People*, 123 Ill. 648, the highway commissioners of a township located in Wayne county, from 1875 to 1883, inclusive, levied the necessary road taxes annually upon all taxable property in their town, except the property of the Ohio & Mississippi Railway Company, which was overlooked. In 1886 the omission was discovered, and the commissioners then made out lists for the several districts of the property of said railway company for each year from 1875 to 1883, inclusive, and orders that the road taxes for said years be levied against the property of the company, which were extended accordingly. It appeared that the railroad was assessed for each of said nine years for state, county, and township taxes, except district road taxes, and that it paid in each of said years all taxes assessed against it. It was held that as said railroad property was not omitted in the assessment for any year or number of years, as all taxes levied upon the property had been paid each year, as there was no defect in the description of the property, and as no road tax had been assessed or levied upon the property during the nine years, sections 276 and 277 of the revenue law did not authorize the assessment of said property, for the years 1875 to 1883, inclusive, as omitted property, and the tax was defeated. That case is conclusive against the right of school district No. 2 to assess appellant's property in the east half of sections 25 and 36 for the years 1892 to 1898, inclusive, as omitted property.

In the case of *In re Appeal of William Wilmerton*, 206 Ill. 15, it is held that stock in a building and loan association cannot be assessed to the holder as omitted property, for the years during which, under the statute, it was exempt from taxation, even though the statute was void.

I am aware the decisions in *C., B. & Q. R. R. Co. v. People*, 136 Ill. 660; *C. & N. W. R. R. Co. v. People*, 195 Ill. 184;

*People v. State Board of Equalization,* 205 Ill. 296; *C. & E. I. R. R. Co. v. People,* 218 Ill. 463, are to the effect that where the company voluntarily return in their schedules property as railroad track, that is not railroad track, in fact, that it is still the duty of the local assessor to assess the parts that are not railroad track, in fact. These decisions seem to be upon the theory that the company has erroneously and voluntarily returned the property as railroad track, and that they can take no advantage of their own wrong.

It is my opinion, notwithstanding the above decisions, that where property has been so returned and paid upon, it cannot afterwards be assessed as omitted property. The contents of such schedules may be voluntary by the company, but the fact that a return is required to be made is not voluntary. It is imperatively required by statute and heavy penalties are provided for a failure to return it in apt time, sec. 49, chap. 120.

The matter of assessing property as "omitted" is a wise provision for compelling all property liable for assessment to pay its equitable share of taxes. When it comes to assessing property as "omitted," I think it must have been omitted in fact and an assessment, even though irregular, would be sufficient to prevent a re-assessment as omitted property.

In my opinion, the above reasoning would not apply to the assessment for 1904. As to such year, the wagon ways were assessed by the county board of review, in lieu of the assessment returned by the local assessor, upon the whole bridge.

If the assessment had been regular in other respects and the bridge was capable of separation for taxing purposes, then in my opinion the tax for 1904 should be sustained.

It is not necessary for me to express my opinion upon the question as to the divisibility of the bridge structure into two parts for taxing purposes. The record in this case is such that that question does not arise, and it would be a work of supererogation to decide a question not before us.

For the reasons given, judgment will be refused as to each of the years for which it is asked.

### NOTE.

After the above decision was in proof it was affirmed in the Supreme Court. See 225 Ill. 593.—Ed.