## The Chicago and Alton Railroad Company

*v.*

## The People *ex rel.* Joseph Dennison, Collector, etc.

*Filed at Springfield March 21, 1881.*

1. Taxes—*assessment of property must be made by the proper persons designated by law.* Under section 1, art. 9, of the constitution, an assessment for taxation must be made by the person or persons to be elected or appointed in the manner the General Assembly shall direct, and not otherwise. Therefore, an assessment made by a person or persons not authorized by law is void, and no judgment can be rendered for the taxes levied on such assessment.

2. Same—*State Board must assess railroad track and rolling stock of railway companies.* Under the Revenue law, the exclusive power to assess railroad track and rolling stock of railway companies, is conferred upon the

State Board of Equalization, and therefore an assessment of property used as railroad track, by the local township assessor, is void.

3. SAME—*what is railroad track within the meaning of the Revenue law.* Land held and in actual use by a railroad company for side-tracks, switches and turnouts must be regarded, within the meaning of the Revenue law, as a part of the right of way of the company notwithstanding it may have machine shops, depots, round-houses, and other superstructures thereon, necessary for the successful use of the road.

4. In this case two lots of a railway company contained about 32 acres after deducting a strip 100 feet wide running through them occupied as the main track. The 32 acres were covered by tracks used all the time for the purpose of running cars and engines over them, and for switching cars, making up trains, loading and unloading cars, and for various other purposes in the transaction of the company's business. It was also used for car shops, machine shops, blacksmith shops, foundry, round-houses, freight depot, stock yards, paint shops, etc.: *Held,* that the whole of the lots constituted a part of the company's right of way, and its railroad track, and as such could not legally be assessed by the local township assessors. But land can not be regarded as right of way merely because one or even two side tracks may be constructed upon it. The land must be, in fact, appropriated for the purpose of the right of way.

WRIT OF ERROR to the County Court of McLean county; the Hon. REUBEN M. BENJAMIN, Judge, presiding.

Messrs. WILLIAMS, BURR & CAPEN, for the plaintiff in error:

1. Property can only be assessed by some competent person or number of persons designated by law to perform that duty, and any attempted assessment by any one else is null and void. Const. 1870, art. 4, sec. 1; *Bureau Co.* v. *C., B. & Q. R. R. Co.* 44 Ill. 229; Cooley on Tax. 184.

2. A double assessment of the same property is void. Const. 1870, art. 9, sec. 1; *People* v. *Bradley,* 39 Ill. 130; *C. & N. W. R. R. Co.* v. *Miller,* 72 id. 144.

3. All the property in controversy is denominated in the statute "railroad track." Secs. 41, 42 and 43, Revenue act; *C., B. & Q. R. R. Co.* v. *Wilson,* 17 Ill. 123; *Low* v. *G. & C. U. R. R. Co.* 18 id. 324; *C. & N. W. R. R. Co.* v. *Miller,* 72 id. 144; *C., R. I. & P. R. R. Co.* v. *People,* 4 Bradw. 468.

4. The property denominated "railroad track" by the statute is only assessable by the State Board of Equalization. Secs. 48, 50, 109, Revenue act, Rev. Stat. 1874.

5. The State Board of Equalization did, in fact, assess said lots 1 and 2 as railroad track, and such assessments have been paid, as shown by the evidence.

6. The assessment of the property is void for uncertainty, as it can not be located. *Shackleford* v. *Bailey*, 35 Ill. 387; *Laflin* v. *Herrington*, 16 id. 301; *Hughes* v. *Streeter*, 24 id. 647.

7. No judgment can be rendered against property for taxes unless the description is such that it can be located. Cooley on Tax. 282, and cases cited; Blackwell on Tax Titles, 124; *Fitch* v. *Pinckard*, 4 Scam. 69; *Fowler* v. *People*, 93 Ill. 116.

8. If land is listed in one class and assessed in another, the assessment is void. *Tibbetts* v. *Job*, 11 Ill. 453; *Graves* v. *Bruen*, id. 431.

9. A decree of court of competent jurisdiction is binding on the parties till reversed.

Mr. C. Beckwith, also for the plaintiff in error:

1. The property assessed by the local assessors was held by the railroad company for its right of way, and was therefore embraced in the class of property denominated by the Revenue law as "railroad track," and not assessable by town assessors. Rev. law of 1872, secs. 40–50.

2. As to the right of the company to acquire lands for right of way, and hold the same, except on a direct proceeding on the part of the State for an abuse of its powers, see *Sheewalter* v. *Pirnier*, 55 Mo. 258; *Natonia Water and Mining Co.* v. *Clarkin*, 14 Cal. 544; *DeCamp* v. *Dobbins*, 29 N. J. Eq. 36; *Speare* v. *Crawford*, 14 Wend. 20; *C., M. & S. Co.* v. *V., H. & W. Co.* 1 Sawyer, 470; *Claremont Bridge Co.* v. *Royce*, 42 Vt. 730; *Cowell* v. *Springs Co.* 11 Otto (101 U. S.), 55.

Mr. Robert B. Porter, and Mr. J. W. Fifer, for the defendants in error:

1. The description is sufficient. It excepts the strip used as "railroad track." The exception in a deed need not be as exactly described as the land conveyed. *Lake Shore and Mich. South. R. R. Co.* v. *P., Ft. W. & C. R. R. Co.* 71 Ill. 38; *Williams* v. *Warren,* 21 id. 541; *Bowman* v. *Wettig,* 39 id. 416.

2. The land in controversy is "real estate other than 'railroad track,' " and only assessable by the local assessors. Rev. law, secs. 46, 47, 49, 109; *C., B. & Q. R. R. Co.* v. *Paddock,* 75 Ill. 616.

3. The court below found this to be "real estate other than 'railroad track;' " and, that being a finding of fact, this court will not disturb it unless it is manifestly against the great weight of evidence. This proposition we regard so well settled by the decisions of this court as to need no citation of authorities.

4. The real question at issue, the question that is of vital interest, both to the public and the plaintiff in error, is, what is the property in controversy? "Railroad track," or "real estate other than 'railroad track?' " If the first, then manifestly the State Board is the only proper assessor. If the second, then the local assessors are the only proper legal authorities to make the assessment. See secs. 46–48, 50, 109, Revenue law; *Porter* v. *Railroad Co.* 76 Ill. 561; *Life Ins. Co.* v. *Pollack,* 75 id. 292; *C., B. & Q. R. R. Co.* v. *Cole,* id. 591; *Pacific Hotel* v. *Lieb,* 83 id. 602; *State Railroad Tax Cases,* 92 U. S. (2 Otto), 575.

5. These thirty-two acres have been found by the court below to be "real estate other than 'railroad track.' " The opportunities of that court for determining were good; and an inspection of the map of the plaintiff in error will demonstrate to this court that there is no reason for disturbing that finding. Turnouts are only means of access to the build-

ings, and would not be used if it were more economical to transport material by other means. The value of the side tracks and turnouts was not included in these assessments.

That the finding should not be disturbed unless manifestly against the weight of evidence needs only to be suggested to the court; but we risk citing a few of the many cases in support of the proposition. *Chicago City Railway Co.* v. *Young,* 62 Ill. 238; *Bourne* v. *Stout,* id. 261; *American Express Co.* v. *Bruce,* 50 id. 201; *Malburn* v. *Schreiner,* 49 id. 69; *Powell* v. *Feeley,* id. 143; *Lalor* v. *Scanlan,* id. 152; *Baker* v. *Robinson,* id. 299.

Mr. Justice Craig delivered the opinion of the Court:

This was an application by the collector of McLean county for judgment against certain lands, for taxes, described as blocks one and two of the Chicago and Alton Railroad Company's survey of its grounds in the city of Bloomington, except a strip of land one hundred feet in width extending through blocks one and two, on which strip the company's main line is located. The taxes are claimed to be due for the years 1873 to 1879 inclusive. Lot one lies in Bloomington township and lot two in Normal township. Both tracts, however, are within the city of Bloomington. The taxes for which application for judgment was made were assessed by the township assessors of the respective townships.

The principal objection urged by the Chicago and Alton Railroad Company to the application for judgment in the county court, and the only one which we shall consider, is, that the property was land held by the railroad company for its right of way, and embraced in the class of property denominated by the Revenue law as " railroad track," and, therefore, not assessable by local assessors. If the property in question belongs to that class known in the Revenue law as " railroad track," then it was assessable by the State Board of Equalization, and the township assessors had no power to make the

assessment, and the judgment based on such assessment is erroneous. If, on the other hand, the property is real estate belonging to the railroad company, other than railroad track, then the assessment by the township assessors was valid and the judgment rendered regular.

Under sec. 1, art. 9, of the constitution, an assessment must be made by the person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise. It is therefore apparent that unless the assessment here involved was made by the person or persons authorized by law it is void.

Section 41 of the Revenue law, Rev. Stat. 1874, p. 865, requires that all railroad corporations owning, operating or constructing a railroad in this State, "shall, in the month of May of the year 1873, and at the same time in each year thereafter, when required, make out and file with the county clerks of the respective counties in which the railroad may be located, a statement or schedule showing the property held for right of way, and the length of the main and all side and second tracks and turnouts in such county, and in each city, town and village in the county, through or into which the road may run, and describing each tract of land, other than a city, town or village lot, through which the road may run, in accordance with the United States surveys, giving the width and length of the strip of land held in each tract, and the number of acres thereof. They shall also state the value of improvements and stations located on the right of way."

Section 48 of the same statute requires the railroad company at the same time to return a schedule to the Auditor of Public Accounts, of the property denominated "railroad track," giving the length of the main and side or second tracks and turnouts, etc. Also showing the rolling stock, etc.

Section 50 requires the Auditor annually, on the meeting of the State Board of Equalization, to lay before the board the statements and schedule required to be returned to him

and makes it the duty of the board to assess the property named in the schedule.

It will be observed, that by the terms of section 41 the railroad company is required to return to the county clerk and Auditor a statement or schedule showing the property held for right of way. This is followed by section 42, which undertakes to determine what property is know by the term railroad track, as follows:

" § 42. Such right of way,.including the superstructures of main, side or second track and turnouts, and the station and improvements of the railroad company on such right of way, shall be held to be real estate for the purposes of taxation, and denominated 'railroad track,' and shall be so listed and valued; and shall be described in the assessment thereof as a strip of land extending on each side of such railroad track, and embracing the same, together with all the stations and improvements thereon, commencing at a point where such railroad track crosses the boundary line in entering the county, city, town or village, and extending to the point where such track crosses the boundary line leaving such county, city, town or village."

What was intended by the enactment of this section of the statute by the use of the words here employed, "such right of way?" Were these words intended to mean merely the strip of land a certain number of feet wide, upon which the railroad company had constructed its main track, or did the framers of the section intend to embrace not only the main line of the road but all side tracks, turnouts and switches which are connected with the main track and which are in actual use by the railroad company as a common carrier?

We can see no reason why the term "right of way" should be confined to the land over which the main track of a railroad should be constructed. The land upon which a side track, a switch, or a turnout is built and in actual use by the company in the business for which it was organized, for all practical purposes is as much held for right of way as

is the land upon which the main track is constructed. In the operation of a railroad it is necessary that trains should pass each other, and hence the necessity of turnouts, switches and side tracks. In the loading of cars, transfer of cars, the making up of trains, and in innumerable other instances that might be named, in the prosecution of its business as a common carrier, side tracks, switches and turnouts are as indispensable to a proper transaction of its business as the main track itself. We are, therefore, of the opinion that the land held and in actual use by a railroad company for side tracks, switches and turnouts, must be regarded, within the meaning of the Revenue law, as a part of the right of way of the company. It is used in the transportation of freight, and also for the purpose of carrying passengers, alike with the land upon which the main track is constructed, and upon what principle the land upon which the main track is laid can be held to be right of way, and the land over which a side track, switch, or a turnout passes can be termed something else, we are at a loss to understand.

Again, if the construction contended for by defendants in error be the correct one, the land upon which the side tracks and turnouts are constructed will have to be assessed by one set of assessors and the superstructures thereon by another board of assessors. Section 42, in express terms, requires the superstructures of the second track and turnouts, and the station and improvements on right of way shall be denominated railroad track, and railroad track can only be assessed by the State Board of Equalization. It is unreasonable to believe that the legislature ever contemplated that land upon which side tracks, turnouts and switches are constructed, should be assessed by township assessors, and the improvements thereon by another and distinct board of assessors. Such a practice would create confusion, and a just and proper assessment could rarely, if ever, be made.

Section 43 seems to have an important bearing on the question under consideration. It provides:

"The value of the 'railroad track' shall be listed and taxed in the several counties, towns, villages, districts and cities, in the proportion that the length of the main track in such county, town, village, district or city bears to the whole length of the road in this State, except the value of the side or second track, and all turnouts, and all station houses, depots, machine shops, or.other buildings belonging to the road, which shall be taxed in the county, town, village, district or city in which the same are located."

If railroad track, which, under the Revenue law, is the right of way, did not embrace land occupied by side or second track and turnouts, why provide for the exception contained in the section? The very fact that the exception was inserted would seem to indicate that side or second tracks and turnouts were a part and parcel of what is denominated in the Revenue law as railroad track.

It will now be necessary to examine the evidence and ascertain whether lots one and two are a part of the right of way in use by the railroad company. These two lots, as appears from the evidence introduced on the application for judgment, contain about thirty-two acres after deducting a strip of land one hundred feet wide running through the two lots, occupied by the main track. The thirty-two acres are covered by tracks used all the time for the purpose of running cars and engines over them, and for switching cars, making up trains, loading and unloading cars, and·for various other purposes in the transaction of the company's business. The ground is also used for car shops, machine shops, blacksmith shops, foundry, round house, freight depot, stock yards, paint shops, etc. Trains run over the whole of it, from one length to the other, every day, except Sunday, and some on that day. These tracks were constructed for the purpose of operating the company's road under its charter as a common carrier of persons and property. The company's principal shops are here for building and repairing cars, machinery and engines. They use the tracks also for switching in

making up trains, putting in cars for temporary use, and for the general business of the road.   One witness, on his cross-examination, said: "We need all the ground and have needed it during the past seven years, for the purposes of transportation, movement of trains, proper facilities of manufacturing and repairing its rolling stock, affording shelter for its engines and tenders," etc.

From the evidence, it is manifest that the railroad company has constructed tracks around the entire thirty-two acres of land; that it is covered with side tracks, switches and turnouts connected with its main track, and in constant use by the railroad company in the prosecution of its legitimate business as a common carrier, for which it was organized under a charter granted by the State. Buildings have been erected on this land by the company, termed machine shops, car shops, round houses, etc., where repairs are made for the company's rolling stock; but this use does not change the character of the manner in which the land is held.   It is still held as right of way, notwithstanding such buildings.

These shops are, doubtless, necessary, to insure a successful operation of the railroad; but whether they are or not is not important, as the Revenue law anticipated that such structures would be erected on the company's right of way, and made express provision, when that was done, that they should form a part of the right of way and be taxed as such.   This is apparent from section 42, which declares that the right of way, including superstructures of main, side or second track, and turnouts, and the station and *improvements* of the railroad company *on such right of way*, shall be real estate for the purpose of taxation, and denominated "railroad track."   The fact, then, that the company has erected and is using shops on this land for the purpose of right of way, does not, in the least, militate against the view that the land is held for right of way.

Inasmuch as the exclusive power to assess railroad track and rolling stock has been conferred on the State Board of Equalization, there seems to be no reason whatever why the power of assessment of property situated as is the property in controversy, should be conferred on the township assessors. The State Board has many facilities for making a correct and just assessment which the township assessor can not have. Under section 109 it has the power to examine persons and papers where it may be necessary to reach a correct result. The locality where the property is situated gains nothing by an assessment made by the local assessor. Whether the assessment is made by the township assessor, or by the State Board under section 43 of the Revenue act, the value of side track and turnouts, station houses, depots, machine shops, or other buildings belonging to the road, shall be taxed in the county, town, village, district or city in which the same are located, thus giving the locality where the property is situated the benefit of the taxes to be collected from such property, whether it is assessed by the local assessors or by the State Board of Equalization.

It is urged, however, that if the construction claimed by plaintiff in error is placed on the statute, then in every case where a railroad company owns a coal mine, or stock yards, and constructs a side track to either, such tract of land, although it may contain many acres, can not be assessed by the township assessors, but must be regarded as right of way. We do not understand that such a result will follow. A tract of land can not be regarded right of way merely because one or even two or more side tracks may be constructed upon or over it, but the land must be appropriated, as is the land in question, to that purpose. The land here is covered with numerous tracks, and is all substantially appropriated for the purpose of right of way, and when such is the case it forms a part of and becomes right of way. If we are correct in this view it follows that the assessment by the local assessors

was void, the judgment of the county court was erroneous, and it will be reversed.

*Judgment reversed.*

WALKER and SCHOLFIELD, JJ.: We concur in reversing the judgment, but not in all that is said in defining what is here right of way.