THE PEOPLE *ex rel.* City of Chicago *et al.*
*v.*
THE STATE BOARD OF EQUALIZATION *et al.*

*Opinion filed October 26, 1903—Rehearing denied December 9, 1903.*

1. TAXES—*"railroad track" does not mean merely the main track.*
The term "railroad track," as used in the Revenue act with reference to the assessment thereof by the State Board of Equalization, is not limited to the main track, but includes side-tracks and switches and all real estate actually used for right of way.

2. SAME—*State Board of Equalization has only statutory powers.* The State Board of Equalization has no powers other than those conferred by statute, and hence has no power, and cannot be compelled by *mandamus*, to divide property returned as "railroad track" into two parts, one to be known as "main track" and the other as "railroad track other than main track."

3. SAME—*purpose of the provision for assessing railroad track.* The Revenue act contemplates that the right of way of a railroad company shall be treated as a unit, and that the assessment of all real estate used for right of way purposes shall be apportioned among all the taxing bodies through which the road runs, in the proportion which the length of the main track in each taxing body bears to the whole length of the road in the State.

4. SAME—*company cannot escape assessment by returning real estate as railroad track.* A railroad company cannot escape the assessment by local assessors of property not used for right of way purposes by returning such property to the State Board of Equalization as "railroad track."

5. CONSTITUTIONAL LAW—*provision for assessing railroad track is constitutional.* The provision of the Revenue act for the assessment of "railroad track" by the State Board of Equalization and the apportionment of the assessment among the several taxing bodies through which the road runs is constitutional.

MAGRUDER, J., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

CHARLES M. WALKER, and SHOPE, MATHIS, ZANE & WEBER, for appellants.

H. J. HAMLIN, Attorney General, (W. H. LYFORD, and LLOYD W. BOWERS, of counsel,) for appellees.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This is a petition for a writ of *mandamus,* filed by the relators, against the respondents, in the circuit court of Sangamon county, to require the State Board of Equalization to divide the real estate of all railroad companies entering the city of Chicago, denominated "railroad track" by the Revenue law, into two classes, viz., "main track" and "property other than 'main track,'" and to certify its assessment of the latter class to the county clerk of Cook county, to the end that such real estate may be taxed for local purposes in said city. An answer and reply having been filed, a jury was waived, a trial had before the court, and a judgment entered denying the writ, and an appeal has been prosecuted to this court.

The Revenue law of 1872 divides, for the purposes of assessment for taxation, all real estate belonging to railroad companies in the State of Illinois into "railroad track," and "all real estate, including the stations and other buildings and structures thereon, other than that denominated 'railroad track,'" and provides that "railroad track" shall be assessed by the State Board of Equalization, and that all real estate designated as "other than

'railroad track'" shall be assessed by the local assessors. It is further provided that "railroad track," with the exception of the value of the side or second track, and all turn-outs, and all station houses, depots, machine shops or other buildings, which are assessed separate from the land upon which they are located, shall be listed and taxed in the several counties, towns, villages, districts and cities through which the railroad passes, in the proportion that the length of the main track in such county, town, village, district or city bears to the whole length of the road in the State.

It is clear from a consideration of the language of the statute and the repeated decisions of this court, (*Chicago and Alton Railroad Co.* v. *People,* 98 Ill. 350; *Chicago and Alton Railroad Co.* v. *People,* 99 id. 464; *Peoria, Decatur and Evansville Railway Co.* v. *Goar,* 118 id. 134; *Chicago and Alton Railroad Co.* v. *People,* 129 id. 571; *Quincy, Omaha and Kansas City Railway Co.* v. *People,* 156 id. 437; *Chicago and North-western Railway Co.* v. *People,* 195 id. 184;) that "railroad track" or right of way may include much more than the main track of a railroad, and that it includes so much real estate as is actually in use for right of way purposes, which in *Chicago and Alton Railroad Co.* v. *People,* 98 Ill. 350, was held to be upwards of thirty-two acres, which was in use for switches, side-tracks, round-houses, etc. In that case, on page 356 it is said: "The land upon which a side-track, a switch or a turn-out is built and in actual use by the company in the business for which it was organized, for all practical purposes is as much held for right of way as is the land upon which the main track is constructed. In the operation of a railroad it is necessary that trains should pass each other, and hence the necessity of turn-outs, switches and side-tracks. In the loading of cars, transfer of cars, the making up of trains, and in innumerable other instances that might be named, in the prosecution of its business as a common carrier, side-tracks, switches and turn-outs are as indispensable

to a proper transaction of its business as the main track itself. We are therefore of the opinion that the land held and in actual use by a railroad company for side-tracks, switches and turn-outs must be regarded, within the meaning of the Revenue law, as a part of the right of way of the company. It is used in the transportation of freight, and also for the purpose of carrying passengers, alike with the land upon which the main track is constructed, and upon what principle the land upon which the main track is laid can be held to be right of way and the land over which a side-track, switch or a turn-out passes can be termed something else, we are at a loss to understand."

We find no authority in the statute for the board of equalization to divide the real estate of a railroad returned to it for assessment as "railroad track" into two parts, one to be known as "main track," which it is suggested by relators should be a strip one hundred feet wide, and "'railroad track' other than 'main track,'" which, it is said, should include all the real estate returned for assessment as "'railroad track' other than 'main track.'" The board of equalization is a creature of the statute and has no powers other than those expressly conferred upon it by the statute, and as the statute confers upon it no power to make such division, the power does not exist. Its duty, as fixed by the statute, is plain. It is to assess the real estate of railroads denominated "railroad track," which amount so determined and assessed is to be certified by the Auditor to the county clerks of the proper counties.

The statute clearly contemplates that the right of way of a railroad company for the purposes of assessment shall be treated as a unit, and that the assessment of its real estate used for right of way purposes shall be apportioned among all the counties, cities, etc., through which the road runs, in the proportion that the length of its main track in each county, city, etc., bears to

the whole length of the road in the State. This method of assessment has been in force in this State for many years, and is equitable and fair. In *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, on page 584, Mr. Justice Scholfield, in discussing the question now under consideration, said: "There is, moreover, an almost insuperable difficulty which must attend all attempts by local assessors to assess the capital stock, franchise, roadway and rolling stock of most railroad companies. Such roads are usually located through several counties. The cost of construction in a particular town or county affords no criterion of the value of that portion of the road, for every mile of the road is equally indispensable to its existence as a whole, and contributes, proportionally, to its principal earnings. Local improvements may, indeed, vary, and they are required to be assessed by the local assessors; but the road and its equipment constitute a single, entire property. In determining the value of such property, the question is neither one of original cost nor of the intrinsic value of the various items of which the road and its equipment are composed, taken separately, but, what is it worth with all its capabilities and facilities as a railroad? The franchise extends to the entire corporate property, and it is not possible that it can be divided. It must, if assessed at all, be assessed as an entirety, and this, as we have already shown, may be in connection with the property to which it is attached."

The right of way of a railroad company cannot be cut up, for the purposes of assessment, into parts, either by dividing it into sections by the lines of the different taxing bodies which it crosses, or by severing from its main track the portions that lie outside of some arbitrary line drawn through the center of the right of way. A railroad is a unit, and for the purposes of assessment its right of way must be treated as a whole. The switch or side-track at which it receives coal, grain, stock or

freight in a country village is as essential to the successful operation of the road as is the switch or side-track in the city at which the articles which it handles as a common carrier are discharged, and the land upon which its side or second track and turn-outs, and its station, machine shops, round-houses, etc., stand, is as necessary to the successful operation of the road and as much a part of its right of way as the land upon which its main track is laid, and the value of each piece of its right of way must be determined by taking into consideration the value of the entire right of way, rather than the value of each piece for commercial purposes wholly disconnected from the use to which it has been applied, as compared with contiguous property used for purposes other than right of way.

It is, however, urged, to hold all of the real estate of a railroad company denominated "railroad track" may be assessed as a unit and the amount thus determined apportioned to the several taxing bodies through which the road runs, in the proportion that the length of the main track in each taxing body bears to the whole length of the road in the State, is to put a construction upon the statute which renders it in conflict with the constitution of this State, which, it is said, requires all real estate to be taxed within the limits, and not otherwise, of the municipality wherein it is located. If this contention were conceded then the trial court was right in denying the writ of *mandamus*, as, if the act in question is unconstitutional, then the power of the State Board of Equalization to assess "railroad track," which includes the property which the board is sought to be coerced to assess, is swept away, and the board in no event could act. We are of the opinion, however, that the Revenue act, in so far as it requires the State Board of Equalization to assess "railroad track," and that the assessment be apportioned to the several taxing bodies through which the road runs in the manner pointed out by the statute,

is clearly constitutional. The method provided in said act for assessing "railroad track" does not remove real estate used for railroad right of way from within the limits of one taxing body and place it within the limits of another taxing body, but merely establishes a method of valuing the proportionate share of each taxing body through which the road runs, in the right of way as a whole, which, as we have seen, is equitable and just, and that method of assessing railroad right of way has frequently been approved by the courts of this and other States, as well as the Supreme Court of the United States. *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co. supra; Law* v. *People,* 87 Ill. 385; *State Railroad Tax cases,* 92 U. S. 575; *City of Dubuque* v. *C., D. & M. Railroad Co.* 47 Iowa, 196.

In *State Railroad Tax cases* the Supreme Court of the United States had under consideration the constitutionality of the Revenue act of 1872 of this State, and it is there said: "It is further objected that the railroad track, capital stock and franchise is not assessed in each county where it lies, according to its value there, but according to an aggregate value of the whole, on which each county, city and town collects taxes according to the length of the track within its limits. This, it is said, works injustice both to the counties and to the companies,—to the counties and cities, by depriving them of the benefit of this value as a basis of local taxation; to the company, by subjecting its track and franchises, on the basis of this general value, to the taxation of the counties and towns, varying, as they do, in rate, without the benefit of the rule of assessment which prevails in those counties in the valuation of other and similar property. But, as we have already said, a railroad must be regarded for many—indeed for most—purposes as a unit. The track of the road is but one track, from one end of it to the other, and except in its use as one track is of little value. In this track as a whole, each county

through which it passes has an interest much more important than it has in the limited part of it lying within its boundary. Destroy, by any means, a few miles of this track within an interior county, so as to cut off the connection between the two parts thus separated, and, if it could not be repaired or replaced, its effect upon the value of the remainder of the road is out of all proportion to the mere local value of the part of it destroyed. A similar effect on the value of the interior of the road would follow the destruction of that end of the road lying in Chicago, or some other place where its largest traffic centers. It may well be doubted whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the country by its relative length to the whole."

In the case of *City of Dubuque* v. *C., D. & M. Railroad Co. supra,* the court had under consideration the validity of a similar statute. On page 202 it was said: "The road, with its right of way, embankments, excavations, iron rails, switches, depots, engine houses, machine shops, etc., is, in a certain sense, an entirety, extending from one terminus to the other. Its value largely depends upon its length of line, the country through which it is located, its proximity to other roads and the business transacted by it. The extent of the line situated in any one city or town, township or other taxing district, whatever improvements it may have therein in the way of machine shops and depots, is valuable chiefly by reason of its connection with the whole line. The value in each taxing district, without reference to the whole line, would be little more than the value of the iron rails for the purposes of removal, and the value of the land used for machine shops, engine houses and other buildings. Under these circumstances it will be readily seen that, under our general Revenue law, to impose upon local assessors throughout the length of our long lines of road, extend-

ing in some instances across the State a distance of three hundred and fifty miles, exclusive of branches, the duty of ascertaining the value of the road in each assessment district would be productive of anything but uniform results."

The contention that large amounts of real estate in the city of Chicago denominated "railroad track" have not been assessed by the board of equalization in the past and will not be assessed by the board in the future, from an examination of the briefs appears to amount to no more than this: that the board heretofore has assessed, and asserts that it hereafter proposes to assess, the real estate of the several railroads located in this State returned to it as "railroad track" as a unit. The method pursued by the board in the past in the assessment of this class of property, in the view of the trial court and of this court, was legal, and as there is no evidence in the record to show that the board contemplates any change in the method of assessing the class of property denominated "railroad track," there is no force in such contention. The petition filed in this case must be held to concede that the property the assessment of which is sought to be enforced is "railroad track," within the meaning of the Revenue act, otherwise the board of equalization would be powerless to assess the same at all, as all real estate of railroad companies in this State other than that denominated "railroad track" is assessable by the local assessors, and unless the property sought to be assessed is properly denominated "railroad track" the board of equalization would be without jurisdiction to assess the same. This court has repeatedly held that a railroad company cannot escape the assessment of its property which is not "railroad track" by the local assessors, by returning it as "railroad track." *Chicago and Northwestern Railroad Co.* v. *People, supra.*

The evidence found in this record wholly fails to make a case of fraudulent under-valuation, or to show that real

estate properly denominated "railroad track" has been omitted by the board of equalization in assessing the real estate of any railroad located in the city of Chicago.

We are of the opinion that it was within the power of the legislature to provide the method designated in the Revenue act for the assessment of the real estate of railroad companies denominated "railroad track," and that the amounts so determined be apportioned among the several counties, cities, etc., through which the road runs, in the proportion that the length of the main track in a county, city, etc., bears to the whole length of the road in the State, and that the circuit court properly denied the writ of *mandamus*.   The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.