## BELL, AUDITOR, ET AL. v. MEEKER ET AL.

[No. 5,496.    Filed October 3, 1906.    Rehearing denied December 18, 1906.]

1. TAXATION. — *Illegal.* — *Injunction.* — *Prepayment of Taxes.* — *When Unnecessary.*—Injunction lies to restrain the collection of illegal taxes, where they are expressly separated from the legal, without the prepayment of such legal taxes.    p. 227.

Bell *v.* Meeker—39 Ind. App. 224.

2. TAXATION. — *Illegal.* — *Injunction.* — *Prepayment of Taxes.*— *When Necessary.*—Injunction lies to restrain the collection of taxes, partly legal and partly illegal, only after the prepayment of the legal portion.  p. 228.

3. SAME.—*State Board of Tax Commissioners.*—*County Assessments.*—*Statutes.*—Under §§8551-8558 Burns 1901, Acts 1901, p. 44, §§3-6, and Acts 1891, p. 199, §§137-140, county assessments of property for taxation may be increased or decreased, by the state board of tax commissioners, only by percentages upon designated classes of property, such percentages to be separate and not combined.  p. 228.

4. SAME.—*State Board of Tax Commissioners.*—*Individual Assessments.*—*Appeal.*—The State Board of Tax Commissioners has power to revise individual assessments of property for taxation only on an appeal from the county board of review. p. 231.

5. SAME.—*State Board of Tax Commissioners.*—*County Assessments.*—*Statutes.*—The State Board of Tax Commissioners may not, under §8552 Burns 1901, Acts 1901, p. 44, §4, separate the improvements from the lands in a whole county and revise the assessments thereof.  p. 231.

6. SAME.—*County Boards of Review.*—*Township Assessments.*— *Equalization of.*—County boards of review have the exclusive power to equalize the township assessments of property for taxation.  p. 232.

7. SAME.—*State Board of Tax Commissioners.*—*County Assessments.*—*Classification.*—The State Board of Tax Commissioners' increase of the assessment of the real estate improvements in a county cannot be upheld because it incidentally affects the real estate of the county, such classification being unauthorized. p. 232.

8. SAME.—*State Board of Tax Commissioners.*—*County Assessments.*—*Lands.*—In revising the assessments on the lands of the various counties, the State Board of Tax Commissioners must include the improvements thereon.  p. 233.

9. SAME.—*State Board of Tax Commissioners.*—*Creation of.*— *Statutes.*—*Acts without.*—The State Board of Tax Commissioners is a statutory body, and its acts outside of the powers prescribed by statute are void.  p. 233.

10. SAME.—*Equalization of.*—*Purpose.*—*Statutes.*—The object of statutes for the equalization of the assessment of property is to compel each citizen to pay his proper amount of taxes. p. 234.

Bell *v.* Meeker—39 Ind. App. 224.

11. TAXATION. — *Statutes.* — *Construction.* — In determining the subject-matter upon which a taxation statute operates, the legislative intention controls, but, such subject-matter being ascertained, a liberal construction applies in the execution of such statute. p. 234.

12. SAME. — *Statutes.* — *State Board of Tax Commissioners.* — *Classifications of Property.*—Where a statute makes express classifications of property on which the State Board of Tax Commissioners is to act in equalizing assessments of property for taxation, all other classifications are necessarily excluded and forbidden. p. 234.

13. APPEAL. — *Taxation.* — *Statutes.* — *Construction.* — *Usage.*— Where a complaint to enjoin the collection of alleged void taxes assessed by the State Board of Tax Commissioners fails to show a departmental construction followed for years, and the defendant stood upon his demurrer thereto, the effect of such departmental construction on the proper judicial construction of the statute is not presented. p. 239.

From Fountain Circuit Court, *Joseph M. Rabb,* Judge.

Suit by Theodore M. Meeker and others against James T. Bell, as county auditor of Fountain county, and another. From a decree for plaintiffs, defendants appeal. *Affirmed.*

*Charles W. Miller,* Attorney-General, *O. B. Ratcliff,* Prosecuting Attorney, *C. C. Hadley, L. G. Rothschild, W. C. Geake* and *O. P. Lewis,* for appellants.

*Charles R. Milford, Benjamin Crane, Charles M. McCabe* and *Lucas Nebeker,* for appellees.

ROBINSON, C. J.—At its meeting in 1903, the State Board of Tax Commissioners entered an order concerning the assessment of the real and personal property of each county in the State, which order, omitting such parts as relate to counties other than Fountain county, was as follows:

"It is hereby ordered by the State Board of Tax Commissioners of the State of Indiana, after a full and fair consideration of the question of the values of the real estate and improvements thereon within the State of Indiana, that said real estate and the improvements thereon be equalized by changing and modifying

the assessments as returned to this board by the several county boards of review, as follows: Fountain county. 'Average value per acre of lands as returned by the county boards, $25.58. Average value per acre of lands and improvements as returned by the county board, $28.41' Action of the State Board of Tax Commissioners in increasing or decreasing the assessments as returned by county boards of review: Land as returned, fifty per cent increase on improvements and five per cent increase on lots and improvements in Attica and Covington.*

*Notes. (1) Increase on improvements in towns and cities includes improvements on lands not platted. (2) Increases or decreases on lands do not apply to lands in towns or cities in tracts of one acre or less. (3) Increases or decreases on improvements on lands do not apply to improvements on unplatted lands in towns and cities. (4) Increases or decreases on lands or improvements do not apply to platted lots in unincorporated towns."

This order was duly certified to the Auditor of State, and the increased valuation so ordered as to Fountain county duly placed upon the tax duplicate of that county. Appellees, owners of lands with improvements thereon outside of cities and towns, sue to enjoin the collection of so much of the taxes assessed against them as is made up of this increased assessment made by the State Board of Tax Commissioners. A demurrer to appellees' complaint was overruled, and, appellants declining to plead further, a decree was entered in appellees' favor enjoining appellants, auditor and treasurer, from collecting or attempting to collect any tax based upon such increased assessment.

The question presented is whether the State Board of Tax Commissioners has authority, in equalizing assessments, to act upon a classification made by the board as indicated in the above order.

As the suit is brought to enjoin only that part of the taxes that is claimed to be invalid, equity does not require that such taxes as are not sought to be enjoined

1. should be paid before bringing suit. The pleading proceeds upon the theory that the whole of the fifty per cent increase on improvements on lands, made by the state board, is void. This assessment, so made by the board,

is, as an entirety, claimed to be void. In *Yocum* v. *First Nat. Bank* (1896), 144 Ind. 272, a county board of review increased the assessment of a bank's capital stock, and suit was brought to enjoin the collection of taxes on this increased assessment on the ground that the board's order was void. In that case the court said: "If the complaint were to enjoin the collection of taxes, part of which were legal and part illegal, the complainant would be required to pay or tender payment of the legal part, and this averment would be necessary before injunctive relief would be granted; but that is not this case, nor is this case within the principle or rule which requires such averment to be made. This action is to set aside and annul a particular order alleged to be void, whereby a specific sum, to wit, $16,000, it is averred was illegally added to the assessed value of appellee's property." See *Board, etc.,* v. *Gruver* (1888), 115 Ind. 224; *Hyland* v. *Brazil Block Coal Co.* (1891), 128 Ind. 335.

Section 8551 Burns 1901, Acts 1901, p. 44, §3, provides: "It shall be the duty of the said board to examine the abstracts of all the real and personal property assessed for taxation in the several counties of this State as returned to the Auditor of State, and to equalize the assessments as hereinafter provided; but said board shall not reduce the aggregate assessed valuation below the true cash value, as defined in this act." Section 8552 Burns 1901, Acts 1901, p. 44, §4, provides that for the purpose of properly equalizing the valuations of real and personal property and railroad property the county auditors shall transmit to the state auditor an abstract of the assessment of property "showing the number, value and average value of each class or kind of enumerated property, as shown by the assessment, the value of each item of unenumerated property, and total value of personal property, the value of all land in each civil township without improvements, the value of all improvements thereon,

and the value of such land with improvements, and, in like order, all city or town inlots, and outlots, showing the value of such lots without improvements, the value of improvements, and the value of such lots with improvements," also main and side-tracks and value of railroad property. "Such abstract shall be arranged in such manner as to show by civil townships the number of acres, value, and average value of improved lands, and in like manner the number of acres, value, and average value of unimproved lands, total number of acres, total value and average value per acre of all lands, the number and value and average value of improved town or city lots, the number, value and average value of unimproved town or city lots, the total number of lots, total value and average value of all lots and the total value of all property real and personal." The value given in this abstract shall be the assessed valuation except in case of railroad property. Section 8553 Burns 1901, Acts 1901, p. 44, §5, is as follows: "Said board, in equalizing the valuation of property as listed and assessed in the different counties, shall consider the following classes of property separately, viz.: Railroad property, lands, town and city lots and personal property, and upon such consideration determine such rates of addition to, or deduction from the listed or assessed valuation of each of said classes of property in each county, or to or from the aggregate assessed value of each of said classes in the State, as may be deemed by the board to be equitable and just; such rates being in all cases even, and not fractional, and such rates as finally determined by said board shall not be combined." It is provided by §8554 Burns 1901, Acts 1901, p. 44, §6: "Counties shall be equalized by adding to the aggregate value of the lands, town and city lots and personal property, in every county in which said board may believe the valuation to be too low, such rate per centum as will raise the same to its proper proportionate value, and by deducting from the aggregate assessed value thereof, in every county

in which said board may believe the valuation to be too high, such per centum as will reduce the same to its proper value, as defined in this act." Section 8555 Burns 1901, Acts 1891, p. 199, §137, makes it the duty of the board to assess railroad property. Section 8556 Burns 1901, Acts 1891, p. 199, §138, provides for tabulating the results. Section 8557 Burns 1901, Acts 1891, p. 199, §139, provides for certifying to the state auditor and he in turn to the county auditors. Section 8558 Burns 1901, Acts 1891, p. 199, §140, provides for the extension of the rates by the county auditors.

Section 8551, supra, makes it the duty of the board to equalize the assessments of property for taxation as "hereinafter provided." Section 8553, supra, expressly requires that in equalizing the valuation of property the board "shall consider the following classes of property separately, viz.: Railroad property, lands, town and city lots and personal property, and upon such consideration" determine such rates of increase or decrease in each class as should be made, and that such rates "shall not be combined." This classification is retained in a subsequent section, and "when said board (§8556, supra) shall have separately considered the several classes of property as hereinbefore required" the results shall be tabulated, "preserving, however, the principle of separate rates for each class of property;" and said board "shall certify (§8557, supra) to the Auditor of State the rates finally determined by the board, to be added or deducted from the listed or assessed valuation of each class of property in the several counties." The above provisions are plain and explicit and clearly show that the legislature intended that whatever increase or decrease the state board should make in the assessment, as returned by the local officers, should be made by percentages and upon classes of property. Not only does the statute require that each class shall be considered separately, but also that the rates of increase or decrease on these several classes shall not be

combined. The board is to have nothing to do with individual assessments, except by appeal, and by 4. §§8553, 8554, *supra,* it is clear that the legislature intended that the board should act upon certain classes only. These two sections need no construction. The classes of property are expressly indicated.

The abstracts of assessments required by §8552, *supra,* so far as real estate of the character here in question is concerned, must show "the value of all land in each 5. civil township without improvements, the value of all improvements thereon, and the value of such land with improvements," and shall be arranged in such manner "as to show by civil townships the number of acres, value, and average value of improved lands, and in like manner the number of acres, value, and average value of unimproved lands, total number of acres, total value and average value per acre of all lands, * * * and the total value of all property, real and personal,", and that "the value to be given in said abstract shall be the assessed valuation," except as to railroad property. It is argued that the fact that this abstract, upon which the state board acts, must show the value of lands without improvements and the value with improvements, show the legislative intention to keep improvements separate from the lands. This abstract shows the assessment of property as it appears in the county auditor's office. Real estate and the improvements thereon are listed separately, but the two together are assessed as real property, as the statute (§8411 Burns 1901, Acts 1895, p. 21), says that "for the purpose of taxation, real property shall include all lands * * * and all buildings and fixtures thereon and appurtenances thereto." A sufficient reason for listing lands and the improvements thereon separately is found in the requirements (§8522 Burns 1901, Acts 1891, p. 199, §104) that the assessor shall annually "note and list all changes found in improvements on real estate, and make return

thereof to the county auditor as in the year in which real estate is to be assessed." While the abstract does show the value of the land and the improvements separately, yet the ultimate showing required is "by civil townships, the number of acres, value, and average value of improved lands, and in like manner the number of acres, value, and average value of unimproved lands, total number of acres, total value and average value per acre of all lands." The statute does require that the abstract shall show the value of all improvements separate from the lands in each civil township, but it does not require that it shall show the total value of all improvements separate from the lands in the whole county. The equalization of the townships is not a matter for the state board to consider, but for the county board of review, and the total number of acres, total

6. values, and average value per acre of all lands in the county as the political subdivision, is the subject-matter upon which the state board is to act. So that there is nothing in §8552, *supra,* furnishing any reason to authorize the state board to separate the improvements from the lands in the whole county. By §8553, *supra,* the board acts upon the totals of the several classes in each of the counties, and by §8554, *supra,* it acts upon the totals of all these classes, except railroad property. If, from the wording of the above section, the board is authorized to consider the improvements separate from the land, it could also make other classifications, such as · improved lands with improvements, improved lands without improvements, unimproved lands, city inlots, city outlots, improvements on such lots, and other classifications.

It is true that the effect of the action of the board in increasing the value of the improvements was to increase the value of the land on which situated. But this

7. cannot be said to amount to a mere irregularity and therefore not necessarily invalid, for the reason that this would be dividing the lands of the county, other than

city and town lots, into improved lands and unimproved lands, a classification the board is not authorized to make. The duty of equalizing the different classes of personal property in a county is imposed upon the county board of review, and it certainly could not be claimed that the board might, under the statute, increase the assessed valuation of the personal property in the county by dividing personal property into classes and increasing the assessed value of one of such classes—cattle for instance—by adding a certain per cent to the total value of all the cattle in the county. Yet there is as much authority in the statute for making this classification as for classifying lands into improved lands and unimproved lands.

8. If the board has jurisdiction of improvements on lands it must be because improvements are part of the land on which situated, because they cannot be within any of the other enumerated classes. But, if they constitute part of the lands within the meaning of the statute, there is no authority for considering them separate from the lands and thus in effect dividing this particular kind of land into two classes. There would be equally as good reasons for making other classifications as above indicated. We see no escape from the conclusion that "lands" means the lands and the improvements, and that it takes both to constitute the class designated in the statute.

9. The State Board of Tax Commissioners is a creature of the statute. The only authority it has relating to the assessment of property for taxation and equalizing assessments is to be derived from the statute. If the statute designates the subject-matter upon which it is to act it has jurisdiction only of such subject-matter. If the statute has classified property for the purposes of equalizing assessments, such classification is conclusive upon the board. It is immaterial that a different classification would bring about equally as good or perhaps better results. The board has no authority to determine for it-

self whether it will follow the statute, or disregard the statute and follow a method of its own. The statute marks the limit of its power, and if it goes beyond the statute its acts are void.

It is argued that statutes providing for the assessment and collection of the public revenues, being for the public good, should be liberally construed. The reason underlying this is that the government must have revenue. But the ultimate result of the action of the board may be a decrease in the amount of public revenue. The object of equalization is not to increase assessments of the public revenues, but to take out inequalities in assessments already made in some authorized way. The end sought is relative equality among the assessments throughout the State. Tax laws are not to be construed from the standpoint of the government alone, nor from the standpoint of the taxpayer alone. There is not sufficient reason for saying that any statute should be liberally construed in determining the subject-matter upon which it is. to operate. The question in every such case is, what did the legislature intend? When the subject-matter has been determined, as in tax laws, the statute providing for the collection of the tax should be liberally construed. If the statute designates certain subject-matters, it should not, by a liberal construction, be extended to cover others, although they may be analogous. If classifications are expressly made, all other classifications are excluded, and to include classifications in addition to those designated by the statute is not liberal construction, but is legislation. In *United States* v. *Wigglesworth* (1842), 2 Story 369, Fed. Cas. No. 16,690, Mr. Justice Story said: "It is, as I conceive, a general rule in the interpretation of all statutes, levying taxes or duties upon subjects or citizens, not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as

to embrace matters, not specifically pointed out, although standing upon a close analogy." See, also, *Hart* v. *Smith* (1902), 159 Ind. 182, 58 L. R. A. 949, 95 Am. St. 280.

In *State, ex rel.,* v. *Vaile* (1894), 122 Mo. 33, 26 S. W. 672, a state board of equalization, having power to adjust the valuation of real and personal property among the several counties, had no authority to reduce the valuation in one county of town lots at one rate and of lands at another, and such order was held void, the court saying: "The meaning of this statute it seems to us is clear. It gives the board power to equalize the value of property, real or personal, among the counties, but it gives that board no power to go into any county and equalize the value of parcels or classes of real estate therein. That is a matter confided by the law to the county boards of equalization. The powers of the two boards are entirely different. * * * The state board may, no doubt, raise or decrease by a uniform per cent the valuation of all lands in a county, without changing the valuation on personal property; or it may raise or decrease by a uniform per cent the valuation of all personal property in a county, without disturbing the valuation of real property; but it has nothing to do with adjusting the values of different parcels of land in the same county. * * * But it is a board of special and limited powers, and when it steps outside of its jurisdiction its acts are void. We can but conclude that the state board had no power to make these orders and that they are void."

In *State* v. *Empanger* (1898), 73 Minn. 337, 76 N. W. 53, the state board of equalization was authorized to add to or deduct from the aggregate valuation of real property in every county, and to add to or deduct from the valuation of real property in any town or district in any county, or the real property in any county, not in villages, towns, or cities, without raising or reducing other real property in the county. In holding that the board could not increase

the assessable value of acre property in a town fifty per cent and leave the value of lands platted into town lots in the same town unincreased, the court said: "In none of these rules is the board given the power to distinguish between different kinds or classes of real property in a district, town, or county, or to add to or deduct from the aggregate valuation of one kind or class, without raising or reducing the valuation of another. It may increase or reduce the aggregate valuation of real property in a county, treating such county as an entirety, or it may equalize by adding to or deducting from valuations as between towns, villages, and cities in the same county, or as between real property within these political subdivisions and that without, in the same county; but in so doing it must treat alike all real property situate within any of these divisions."

It was held in *Orr* v. *State Board, etc.* (1891), 2 Idaho 923, 28 Pac. 416, that a statute empowering the board to equalize the valuation of the real and personal property among the several counties and towns, did not authorize the board to raise or diminish the valuation put upon any class or classes of property, nor to fix the valuation of any class of property.

In *Campbell* v. *Minnehaha Nat. Bank* (1898), 11 S. Dak. 133, 76 N. W. 10, under a statute authorizing the state board of equalization to consider certain classes of personal property, one of which was "the total value of stocks or shares," it was held that the board was not authorized to divide the property so classified and raise the valuation of bank stock without increasing that of other stocks and shares. The court in that case said that the state board is limited to the abstracts returned by the county auditors and "must accept as the unit of computation the classification therein contained, compare each class respectively, with others of a like class, and is without power to divide a class for the sole purpose of increasing assessment of a part thereof, leaving the valuation of like

property in the same class unchanged. It was certainly without warrant of law, unjust, and equivalent to an individual assessment, for the board as alleged in the complaint, to select the item 'bank stock' from its class, which included all kinds of 'stocks or shares,' and assess the same 'throughout the entire state at sixty per cent of the par value thereof, regardless of the actual value.' "

In *McCutcheon* v. *Board, etc.* (1895), 95 Iowa 20, 63 N. W. 455, a statute required the state board of equalization to equalize the valuation of real property among the several counties and towns by adding to or taking from the aggregate valuation of real property of each county such percentage in each case as would raise or reduce the same to its proper valuation, and that the county board should equalize the assessments of townships, cities, and towns substantially as the state board equalized assessments among the several counties. The county board raised the assessment on farm lands of tracts of more than ten acres situated within the limits of a certain town. In holding this order void the court said: "The order in question does not add to the aggregate valuation of the real property in Rock Rapids, but to a part thereof, the part used for a particular purpose—farm lands. It is not substantially as the state board equalizes assessments. With the same propriety might the county board add to the valuation of business property or residence property, or to the real property in a particular part of the assessorial district."

In *Montis* v. *McQuiston* (1899), 107 Iowa 651, 78 N. W. 704, the county board was authorized to equalize the assessments of the several townships, cities, and incorporated towns of their counties substantially as the state board equalized assessments among the several counties. The state board equalized among the counties by adding to or taking from the aggregate valuation of real property. Although a statute divided a city into districts with an assessor in each, it was held that the county board had no

authority to equalize as between the districts, but could only equalize by adding to or taking from the aggregate valuation of the city. See, also, *People, ex rel.,* v. *State Board, etc.* (1903), 205 Ill. 296, 68 N. E. 943; *People* v. *Ames* (1900), 27 Colo. 126, 60 Pac. 346.

In *Oregon, etc., R. Co.* v. *Croisan* (1892), 22 Ore. 393, 30 Pac. 219, cited by counsel for appellant, the law of Oregon designated three classes of real property for the purpose of assessment and taxation: (a) City, village, or town property; (b) mortgages, deeds of trust, etc.; (c) all other real property. This classification was made upon the assessment rolls, and the state board was bound by such classification and had no authority to change the assessment rolls of the classification of property as indicated thereon. The state board was required to "consider real estate, including town and city lots, and personal property separately," and "add to the aggregate valuation of the real, and several kinds or classes of personal property, in every county," etc. By the oath of office the board was required to "equalize all the property, both real and personal, as enumerated upon the equalized county assessment rolls of the several counties." · It was claimed in argument that the board should consider all real property as one class, but the court held that the board might revise and equalize the aggregate valuation of the several classes of real property authorized by law and enumerated upon the assessment roles. This was following the classification made by statute, and was authorized by the statutory duty placed upon the board. But, upon the action of the board in creating a class (the question in the case at bar) known as railroad land, and in holding that this was not a valid classification, the court said: "This [the above classification] is the only classification of real property known to the law, and the only one the state board is authorized or empowered to adopt or consider. It cannot subdivide these classes into other or different classes, by reason of the

source of title or present ownership.   The classification of property for the purposes of assessment and taxation is a legislative function, and the assessors and boards of equalization are bound by the classification made by the legislature. 1 Desty, Taxation, 96.   * * *   It may add to or deduct from the aggregate valuation of the class to which these lands belong a certain per cent, if necessary to equalize such valuation as between the counties, but it has no power to change the individual assessment, or adopt a classification based solely on the present ownership or source of title.   If it may adopt a classification based upon present ownership, and add to the county valuation thereof a different rate per cent from that added to other property of the same kind, it may treat the property of every individual taxpayer the same way, and thereby increase the individual assessment without notice to the taxpayer, and in violation of the constitutional provision which requires a uniform and equal rate of assessment and taxation."

The above case and also *Smith* v. *Kelley* (1893), 24 Ore. 464, 33 Pac. 642, held that the state board could consider the classes made upon the assessment rolls as the statute required that they should be so made, but also held that the board has no authority to make any classification not made by the statute.

It is argued at some length in appellant's brief that the construction given this statute by the state board and acted upon for a term of years should be given due consideration and weight by the court.   But as appellants refused to plead further after their demurrer to the complaint was overruled, and as the complaint does not disclose the fact of such continued construction of the statute by the state board, the question is not presented by the record.

Decree affirmed.