LESE *v.* ST. JOSEPH VALLEY BANK, ADMINISTRATOR.

[No. 11,810. Filed February 27, 1924. Rehearing denied June 3, 1924.]

1. DEATH BY WRONGFUL ACT.—*Right of Action Statutory.*—A right of action for death by wrongful act does not exist in the absence of a statute creating it. p. 521.

2. DEATH BY WRONGFUL ACT.—*Damages Recovered.—Not Assets of Estate.*—The damages recovered for wrongful death do not become assets of the deceased's estate, but constitute a trust fund to be distributed to the persons designated by the statute. p. 521.

3. DEATH BY WRONGFUL ACT.—*Damages Recovered.—Charges Against.—Funeral Expenses.—Monument.—Not Allowed.*—The damages recovered for wrongful death are not chargeable with the funeral expenses of the deceased nor with the cost of erecting a monument at his grave (*Hildebrand* v. *Kinney,* [1909], 172 Ind. 447, distinguished). p. 522.

4. DEATH BY WRONGFUL ACT.—*Damages Recovered.—Subject to Expenses of Collection.*—The damages recovered for wrongful death are chargeable with the necessary expenses incurred in the collection, including attorney's fees and allowance to the administrator for his services. p. 522.

5. DEATH BY WRONGFUL ACT.—*Damages Recovered.—Charges Against.—Monument to Grave Not Allowed.—Estoppel of Distributee to Object.*—The daughter of the deceased, a girl sixteen years of age at the time of her father's death, who had been in this country only a few months and could not speak our language, was not estopped to object to the administrator paying the deceased's funeral expenses and the cost of a monument to his grave out of the damages recovered for his death, although she accompanied the administrator when he selected the monument, expressed her satisfaction therewith, and authorized the administrator to pay for the same. p. 523.

6. EXECUTORS AND ADMINISTRATORS.—*Assets of Estate.—Contributions to Family of Deceased.*—Contributions to the fam-

ily of the deceased, made by his fellow-countrymen, in accordance with a custom of their native land, for the purpose of providing an impressive funeral service, are not assets of the deceased's estate.    p. 523.

From Elkhart Superior Court; *Thomas B. Hile,* Judge.

The St. Joseph Valley Bank, administrator of the estate of Paul Ianigro, filed its final report for settlement of the estate, to which, Concetta (Ianigro) Lese, an heir, by Glen R. Sawyer, her guardian *ad litem,* filed exceptions.    The exceptions were sustained in part and overruled in part, and the heir appeals.    *Reversed.*

*C. C. Raymer* and *C. T. Olds,* for appellant.

*Robert E. Proctor* and *Elias C. Salisbury,* for appellee.

McMahan, J.—Appellee as the administrator of the estate of Paul Ianigro filed its final report, to which appellant filed exceptions.    The exceptions were sustained in part and overruled in part.

The final report, when amended to comply with the holding of the court, was approved.    The facts were found specially and so far as need be stated are, in substance, as follows:    The decedent met his death through the wrongful act of the New York Central Railroad.    The administrator charged itself with $1,250 received from the railroad in settlement of a claim arising out of the death of the decedent who was an Italian and who had been in this country about fourteen years.    He left surviving him a widow, who resided in Italy, where she was, at the time of his death, living in open adultery.    Appellant was the only child of decedent and was about sixteen years of age when he died. She had been in this country about five months prior to his death and was not able to speak our language.

The estate or property owned by the decedent at the

time of his death consisted of $9 cash, $70.70 on deposit in bank, and $50.92 for accrued but unpaid wages. The $9 was found on the body of the deceased by the coroner and by him turned over to a brother of the decedent. The bank also paid the $70.70 to said brother, who, in turn, gave all of said money, $79.70, to his wife, who expended the same in buying clothing for appellant. It had been the custom of the Italian people living in the city of Elkhart, when there was a death of one of their people, to make a contribution or donation of money to the head of the household when and where such death occurred. The decedent, at the time of his death, and his daughter were living with the brother above referred to, and the money donated by the Italian people on the death of appellant's father was, according to such custom, given to this brother. The amount so given to the brother was $308.50. It was a custom of the Italian people to bury one of their members with impressive ceremonies, and they would often, in so doing, expend money for a monument out of proportion to the estate left by the decedent. Appellant took part in making the expenses incurred in the burial of her father and expressed a desire that he be given a good burial and that a monument should be erected at his grave, because, as she, at the time, said, there would be money coming on account of his death. The brother of the decedent and appellant consulted with a monument dealer and made arrangements for the erection of a monument at a cost of $177. This monument was erected, after which appellant expressed her satisfaction and directed appellee to pay said $177 for the monument, which it did. It also paid out, on account of the burial of the decedent, $8 for a pair of shoes; $451 to an undertaker, $10 for moving the body from a temporary to a permanent burial place, and $36 for religious services. The decedent, at the time of his

death, owed debts aggregating $32.21. The decedent did not own a burial lot, so the brother purchased a lot, taking the certificate of title in his name. He paid $30 for this lot and $33 for having it filled in and leveled. The brother's wife expended a further sum of $35, which the members of the family had given her, for clothing purchased for appellant when her father died. Appellee, as administrator, paid each and all of the above items amounting to $1,286.62. It also paid to the clerk of the court $14.40 for court costs. The court found the services of the attorney for the administrator were worth $75, and that the services of appellee as administrator were worth $25.

The court concluded as a matter of law: (1) That the money turned over to the brother of the decedent by the coroner and the bank, amounting to $79.70, was wrongfully turned over to him; that it belonged to the decedent's estate and that the administrator should be charged with its recovery.. (2) That the general estate of the decedent, amounting to $130.62, should be first applied to the payment of the expenses of administration, including $14.40 court costs, $25 administrator fees and $75 for attorney fees, and that the balance of $16.22 should be applied on funeral expenses. (4) That the balance of funeral expenses, $434.78; $8 for shoes for the decedent, $10 for removing body of decedent, $36 for religious services, and $177 for monument, a total of $665.78, should be paid out of the $1,250 received from the railroad company in settlement of its liability growing out of the death of the decedent. (5) That all other payments made by the administrator out of the money in its hands were illegal. (6) That the wife of the decedent was not entitled to share in the distribution of the estate nor in the $1,250 derived from the railroad company and that the $584.22 thereof remaining after the payment of the items mentioned in

No. 4 should be paid to appellant. (7 and 8) That the $308.50 paid by the Italian colony to the decedent's brother was not a part of the estate, and that the report should be amended in accordance with the conclusions of law and the estate settled accordingly.

Appellant excepted to each conclusion of law and, on appeal, contends: First, that it was error to allow the administrator to use any part of the $1,250 for a monument, for undertaker's bill, or for other expenses incurred because of the burial of the deceased. Second, that the $308.50 was given for burial purposes and that the administrator should be charged with the same.

Section 285 Burns 1914, Acts 1899 p. 405, reads as follows: "When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor * * *. The damages cannot exceed ten thousand dollars; and must inure to the exclusive benefit of the widow or widower, (as the case may be), and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

In the absence of statute, no such right of action existed. The legislature in enacting this statute not only created the right of action and directed who could prosecute it, but it went farther and stated to whom and the manner in which the money when received should be distributed. The Supreme Court in *Jeffersonville, etc., R. Co.* v. *Hendricks, Admr.* (1872), 41 Ind. 48, 74, said: "Having thus conferred the right of action, and directed who should prosecute it, had they stopped here, it would have been inferable, at least, that the fund recovered would have been simple assets of the estate to be disposed of as other assets. But having created this fund, the legislature had the right to determine what should become of it and who should be benefited by it; and in the exercise of that

right, the fund itself is charged with the express trust that it must inure exclusively to the benefit of the widow and children, if any, * * *. Upon each and every farthing recovered in an action of this kind is ineffaceably impressed a trust of the most high and sacred character." *Duzan* v. *Myers* (1903), 39 Ind. App. 227; *Grancik* v. *Rajcany* (1913), 54 Ind. App. 274, 101 N. E. 745; *Smith, Admx.*, v. *Cleveland, etc., R. Co.* (1917), 67 Ind. App. 397; *Pittsburgh, etc., R. Co.* v. *Hosea* (1899), 152 Ind. 412; *Pittsburgh, etc., R. Co.* v. *Gipe* (1903), 160 Ind. 360. In the case last cited, the court said: "When recovered, the amount of the recovery does not become assets in the hands of the administrator to be distributed, as other assets of the estate, 'but the amount recovered shall be for the exclusive benefit of the widow and next of kin of such deceased person.' The creditors of the estate of the deceased have no interest whatever in the amount of such recovery."

Appellee contends that, under the law, the administrator of a decedent's estate is bound to pay the burial and funeral expenses and that the reasonable 3. cost of a monument may be classed as a part of the funeral expenses and paid by the administrator out of the funds of the estate. In *Hildebrand* v. *Kinney* (1909), 172 Ind. 447, cited by appellee, the funds in the hands of the administrator were all derived from the sale of real estate owned by the decedent in his lifetime. What the court there said was in reference to a solvent estate where there were sufficient funds to pay all the claims. The other cases cited by appellee are of like character, and are not of controlling influence in the instant case.

The $1,250 is chargeable only with the necessary expense incurred by the administrator in its collection. 4. tion. *Yelton, Admr.*, v. *Evansville, etc., R. Co.* (1893), 134 Ind. 414. Appellant concedes this to

be the law and makes no objection to the report in so far as the allowances for attorney fees and for the services of the administrator are concerned.

Appellee contends that appellant by her action in going with her uncle when he selected the monument, her expression of being satisfied and pleased with **5, 6.** the monument and in authorizing appellee to pay for such monument estops her from objecting to the payment of such claims out of the $1,250. We cannot concur in this contention. The facts, both as shown by the evidence and the special finding, disclose that appellant, at the time her father was killed, was but sixteen years of age, had been in this country only a few months and could not speak our language. The expenses for the burial and monument were all incurred before a settlement was made with the railroad company. There is nothing to show that appellant, at any time, knew the value of her father's estate, although it is reasonable to infer that she knew it was of little value. The $308.50 given to the family by the Italian people was not given until after the burial, but it was given before the monument was ordered. Appellee argues that since appellant was, as the court found, "a woman grown in physical appearance and size," the facts are sufficient to warrant the court in holding that appellee was justified in paying for the monument and for burial out of the $1,250. Appellee makes no claim that it was not fully informed as to the age of appellant. We hold that appellant is not estopped from objecting to the amounts paid for burial and for the monument. In so far as the $308.50 is concerned, there is nothing in the evidence or in the finding that would warrant this court in saying it was a part of the estate of the decedent for which the administrator is chargeable. The court erred in the fourth conclusion of law, since none of the items therein mentioned should be paid out of the

$1,250. The sixth conclusion is erroneous in so far as the amount ($584.22) which the court concludes should be paid appellant. The items mentioned in conclusions four, amounting to $665.78, are not payable out of the $1,250.

Judgment reversed, with directions to the trial court to restate its conclusions of law and for further proceedings in conformity with this opinion.